731 P.2d 620

**FUND MANAGER, PUBLIC SAFETY PERSONNEL RETIREMENT SYSTEM, Petitioner,**

**v.**

**SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA, and the Honorable Rebecca A. Albrecht, a Judge thereof;**

**Robert K. CORBIN, Attorney General for the State of Arizona, Real Party in Interest, Respondents.**

**No. 1 CA–CIV 9026 SA.**

Court of Appeals of Arizona, Division 1, Department D.

Sept. 23, 1986.

Reconsideration Denied Nov. 6, 1986.

Review Denied Jan. 28, 1987.

Eaton, Lazarus, Dodge & Lowry, Ltd. by David D. Dodge, Marc R. Lieberman, Phoenix, for petitioner.

Robert K. Corbin, Atty. Gen. by Anthony B. Ching, Sol. Gen., Phoenix, for respondents.

## OPINION

CORCORAN, Judge.

This special action arises out of a superior court special action that the fund manager brought against the Arizona attorney general seeking extraordinary, declaratory, and injunctive relief.

### Facts

Before July 1980, the attorney general acted as the exclusive legal representative of the fund manager, the tribunal empowered to manage the Public Safety Personnel Retirement System (system). A.R.S. § 38-848. In July 1980, the legislature amended § 38-848(J), now § 38-848(K), to add the italicized language:

> The attorney general *or an attorney approved by the attorney general and paid by the fund* shall be the attorney for the fund manager and shall represent the fund manager in any legal proceeding.

In January 1981, the fund manager hired a private law firm to act as its legal counsel, and sought the attorney general's approval pursuant to A.R.S. § 38-848(K). After the fund manager complied with the state procurement code, A.R.S. §§ 41-1051, *et seq.* (repealed and replaced with §§ 41-2501, *et seq.*, effective January 1, 1985), the attorney general approved the private law firm as the fund manager's counsel.

In the spring of 1985, the fund manager solicited new bids for private legal counsel. Apparently unaware that the procurement code had been repealed and revised, the fund manager followed the procedure it had employed in 1980, and chose Eaton, Lazarus, Dodge & Lowry (Eaton Lazarus) as its counsel.

Pursuant to A.R.S. § 38-848(K), the fund manager requested the attorney general's approval of the choice. By letter dated November 15, 1985, the attorney general declined approval, noting that the fund manager had not complied with the revised procurement code and related regulations. The letter from J. David Rich, Assistant Attorney General, to Lowell Sutton, Administrator of the system, also stated:

> Once the procurement code and its applicable rules have been complied with, we will approve the hiring of counsel for the Fund Manager of the Public Safety Personnel Retirement system, subject to the following conditions. First, outside counsel will submit opinions and advice to this office for review and forwarding to the Fund Manager; and second, outside counsel may not initiate any litigation on behalf of the Fund Manager or appeal any decisions rendered against the Fund Manager without the approval of the Attorney General. Any violation of these restrictions would cause an automatic withdrawal of the Attorney General's approval and termination of the contract. These restrictions would not apply to pending litigation where the Attorney General was acting in a capacity adverse to the Public Safety Personnel Retirement System. Furthermore, any contract with outside counsel would be terminable June 30, 1986. At that time the Attorney General will consider whether to resume direct representation of the Fund Manager, Public Safety Personnel Retirement System.

Opposing the need to comply with the procurement code, disputing the legality of the conditions, and anticipating that the attorney general might seek an injunction prohibiting the fund manager from com-

pensating Eaton Lazarus for legal services, the fund manager filed a special action petition in the superior court.

The trial court concluded that: (1) the fund manager is subject to the Arizona procurement code, A.R.S. §§ 41–2501, *et seq.;* (2) under A.R.S. § 38–848(K), viewed together with § 41–192 (which relates to restrictions on state agencies as to hiring legal counsel), the right to decide whether the attorney general or private counsel will represent the fund manager belongs to the attorney general; and (3) the attorney general's decision to represent the fund manager is within his statutory authority and, therefore, cannot be an abuse of discretion.

Petitioner, the fund manager, raises the following issues in this special action petition:

(1) whether this court should exercise its discretion to accept jurisdiction;

(2) whether the fund manager may choose whether to be represented by the attorney general or by private legal counsel;

(3) whether the fund manager must comply with the procurement code, A.R.S. §§ 41–2501, *et seq.*, in hiring private legal counsel; and

(4) whether the attorney general may require, as a condition to approval of the fund manager's representation by private legal counsel, the fund manager's agreement that its private counsel must submit all opinions and advice to the attorney general for review, and that the fund manager may not commence any legal action or appeal any court decisions without the attorney general's prior approval.

### Jurisdiction

■ The court of appeals' special action jurisdiction is statutory in origin. 1 *Arizona Appellate Handbook* § 7.3.2 (1986). A.R.S. § 12–120.21(A)(3) provides that the appellate court shall have "[j]urisdiction to issue injunctions, writs of mandamus, review, prohibition, certiorari and other writs necessary and proper to the complete exercise of its appellate jurisdiction." The

court of appeals has no original jurisdiction to issue writs to state officers. *Goodrich v. Industrial Comm'n,* 11 Ariz.App. 244, 463 P.2d 550 (1970).

In the present case, the fund manager and attorney general urge us to accept special action jurisdiction. Although the trial court's judgment is appealable, immediate special action relief is appropriate for several reasons. As the attorney general notes, the fund manager is an important state agency, responsible for the system, with assets of nearly $1,000,000,000. The fund manager's ability to function effectively will be hindered if the question of its legal representation remains unresolved pending an appeal. In addition, the attorney general has indicated his intention to seek to enjoin the fund manager from paying Eaton Lazarus for services provided.

Therefore, we are exercising our discretion to accept jurisdiction as between these parties, in aid of our appellate jurisdiction, since the judgment has been appealed and the appeal will be heard in this court.

Insofar as the fund manager is attempting to appear before this court in this special action on behalf of funds other than the system (i.e., the Elected Officials Retirement Plan and the Corrections Officer Retirement Plan), we must decline such jurisdiction, since the fund manager did not appear on behalf of these funds in the superior court. The court of appeals lacks original jurisdiction as to the funds not at issue in the superior court action. 1 *Arizona Appellate Handbook* § 7.3.2. (1986).

### The Fund Manager Chooses

■ The attorney general has indicated that his office now has sufficient resources and personnel to assume representation of the fund manager. The attorney general has notified Eaton Lazarus that he believes that the legislature intended that he be the fund manager's counsel unless he decides otherwise. The fund manager argues that the applicable statutes empower it to choose whether to be represented by the attorney general or by outside counsel, and

that it has chosen to be represented by Eaton Lazarus.

A.R.S. § 41–192 provides that the attorney general shall serve as chief legal officer of the state, and that, notwithstanding any law to the contrary, no state agency other than the attorney general shall employ legal counsel or make an expenditure for legal services. A.R.S. § 41–192(A), (E). Yet, a portion of the statute dealing with the system specifically provides that an attorney approved by the attorney general and paid by the fund may represent the fund manager. A.R.S. § 38–848(K). In addition, § 38–883(B)(1), dealing with the Corrections Officer Retirement Plan, which became effective July 1, 1986, provides that the fund manager may employ such services as *it* deems necessary, including legal services. Laws 1986, ch. 325. Finally, A.R.S. § 41–2513(B) provides that, in accordance with § 41–192(E), and notwithstanding any contrary statute, no contract for legal services may be awarded without the attorney general's approval.

At first glance, § 41–192 appears to give the attorney general sole discretion to employ outside legal counsel. Yet, the other three statutes cited above indicate that the attorney general serves as an approver of an agency's choice of counsel, rather than as a decider whether outside counsel may be hired. While § 41–192 says that no state agency other than the attorney general's office may employ counsel, notwithstanding other laws, this "notwithstanding" language cannot be taken literally. A.R.S. §§ 38–848(K), 38–883(B)(1), and 41–2513(B) were all enacted or amended long after the adoption of § 41–192(E), and these sections clearly and specifically contemplate that the fund manager may lawfully expend monies for private counsel after the attorney general has approved the chosen counsel. Recent, specific statutes govern over their older, more general counterparts. *Lemons v. Superior Court,* 141 Ariz. 502, 687 P.2d 1257 (1984). A.R.S. § 38–883(B)(1), although not at issue in the present case, evidences legislative intent with its mandate that the fund manager

may employ such legal services at it deems necessary.

Thus, the sole power conferred upon the attorney general by A.R.S. § 38–848(K) with respect to the system's legal representation is the power to approve the fund manager's choice of counsel. This view garners additional support from the fact that when the legislature amended A.R.S. § 38–848(J), now § 38–848(K), changing the fund manager's legal representation from the attorney general to the attorney general or an attorney approved by him, the legislature did not specify that the choice was the attorney general's. Rather, the legislature used the term "approved," which is not defined in the system's enabling legislation, or in § 1–215, the general definitional provision of Arizona's state statutes. In accord with § 1–213, the term must be construed according to its common meaning. Webster's defines the word "approve" as an expression of a favorable opinion, a giving of official sanction to, or a ratification. *Webster's Third New Int'l Dictionary* 106 (1969). Webster's distinguishes "approve" from the word "sanction," which "adds to approve notions of permission." *Id.* This distinction has been recognized in numerous opinions. *E.g., Hammer v. Jefferson Oil & Gas,* 38 Ill. App.2d 136, 186 N.E.2d 667 (1962); *Western Hosp. Ass'n v. Industrial Accident Bd.,* 51 Idaho 334, 6 P.2d 845 (1931). Black's Law Dictionary distinguishes "approve" from "authorize," which implies permission to do an act in the future. *Black's Law Dictionary* 94 (5th ed. 1979).

In view of these commonly understood definitions of approve and sanction, the attorney general's conclusion that he may choose whether to represent the fund manager or to approve the hiring of outside counsel would only apply if § 38–848(K) spoke in terms of sanctioning or authorizing. Thus, the attorney general may approve or disapprove the choice of outside counsel, but not the decision whether or not to use outside counsel. Such approval or disapproval must be based on a good faith determination as to whether the chosen counsel has the professional qualifica-

tions and capabilities to adequately represent the system's interests.

This view is further supported by the fact that the legislature has given the fund manager the power to "do all acts, whether or not expressly authorized, which may be deemed necessary or proper for the protection of investments held in the fund." A.R.S. § 38–848(G)(9). This broad grant of authority evidences legislative intent that the fund manager have considerable discretion in the management of the system, and we conclude that the power to choose legal counsel is a necessary component of such authority.

Finally, the attorney general apparently recognized his role as an approver of counsel, rather than as a chooser, when he advised the fund manager that he would approve its choice of counsel, after there was compliance with the procurement code. Letter from Mr. Rich to Mr. Sutton, *supra.*

### *The Procurement Code*

■ Even if the fund manager may choose whether to be represented by the attorney general or by outside counsel, the attorney general argues that the petitioner must comply with A.R.S. §§ 41–2501, *et seq.*, when attempting to expend public monies. The fund manager, on the other hand, asserts that, not being a state agency or expending public monies, it need not follow the procurement code procedures. The applicable portion of the code provides:

> This chapter applies to every expenditure of public monies ... by this state, acting through a state governmental unit as defined in this chapter, under any contract....

A.R.S. § 41–2501(B). The procurement code's definition of a "state governmental unit" includes any state agency. A.R.S. § 41–2503(19).

In *Fund Manager v. Arizona Dep't of Admin.*, 151 Ariz. 93, 725 P.2d 1127 (Ariz. App.1986), this court held that the fund manager is a state agency. The court reached this conclusion for the following reasons. The individual members of the fund manager are appointed by the gover-

nor under A.R.S. §§ 38–848(A) and 38–211(A), which pertain to the appointment of state officers. In addition, § 38–848(K) states that the attorney general, the chief legal officer of the state, is a legal representative of the fund manager. Further, the Sunset Review Laws, which pertain only to state agencies, provide that the fund manager shall terminate on July 1, 1996. A.R.S. § 41–2368.02(A)(3). Finally, this court noted that it is a fundamental principle of statutory construction that items not placed in a list of exemptions to a general rule are covered by that general rule. *Bushnell v. Superior Court*, 102 Ariz. 309, 428 P.2d 987 (1967); *see also* 2A Sutherland, *Statutory Construction* § 47.-23 (4th ed. 1984). While the procurement code exempts a number of agencies from its coverage, the fund manager is not among these exempted agencies. A.R.S. §§ 41–2501(D)–(R). The trial court correctly held that the fund manager is a state agency.

Therefore, being a state agency, the fund manager must comply with the procurement code if it expends public monies. A.R.S. § 41–2501(B). The fund manager argues that, since only five out of 106 employers who contribute to the system are state government agencies, the monies in the system are not state funds. Since the procurement code applies to expenditures of *public monies*, not state funds, the fund manager's point is inapposite. The term "public monies," while not defined in the procurement code, is defined in A.R.S. § 35–212, which by its terms applies to the procurement code, §§ 41–2501, *et seq.* A.R.S. § 35–212 provides:

> A. The attorney general in his discretion may bring an action in the name of the state to enjoin the illegal payment of public monies, *including violations of § 11–952 and title 41, chapter 23*, or if the monies have been paid, to recover such monies plus twenty percent of such amount together with interest and costs, including reasonable attorney fees, to be paid to the state treasurer or other ap-

propriate official to the credit of the fund from which the payment was made.

B. As used in this section, "public monies" includes all monies coming into the lawful possession, custody or control of state agencies, ... irrespective of the source from which, or the manner in which, the monies are received.

(Emphasis added.) The italicized words were added by Laws 1984, ch. 251, § 21, effective January 1, 1985. Title 41, ch. 23, which is the procurement code, was adopted by § 2 of the same enactment.

By its terms, § 35–212 applies to the procurement code. Thus, any monies paid, or to be paid, to the fund manager's outside counsel are public monies. The statute applies to the present controversy, since the attorney general indicated his intention to enjoin payments to Eaton Lazarus, and allegedly threatened to sue for recovery of monies paid. Therefore, we hold that the fund manager, being a state agency which expends public monies, must comply with the procurement code, A.R.S. §§ 41–2501, *et seq.* We must remand on this issue so that the trial court may determine whether there was compliance with the code.

### Conditions Imposed on Outside Counsel

■ The final issue in this special action is whether the attorney general may require, as a condition to approval of the fund manager's legal representation by private counsel, the fund manager's agreement that its private counsel will submit all opinions and advice to the attorney general for review, and that the fund manager may not commence any legal action or appeal any decision without the attorney general's prior approval. We hold that the attorney general may not impose such conditions.

In the letter to the administrator of the fund manager, the attorney general attempted to impose such conditions, and stated that a violation of the conditions would automatically terminate the attorney general's approval and the contract with outside counsel. Letter from Mr. Rich to

Mr. Sutton, *supra.* The attorney general explained that it was appropriate for his office to control the actions of the fund manager's outside counsel since the latter are "basically attorneys acting in" place of his office. We cannot agree that the attorney general may exercise continuing supervision over the legal services which private counsel provides to the fund manager.

It has long been settled in Arizona that the attorney general has no common law powers and possesses only those powers granted to him by constitutional provision or statute. See e.g., *State ex rel. Morrison v. Thomas*, 80 Ariz. 327, 297 P.2d 624 (1956); *State ex rel. Frohmiller v. Hendrix*, 59 Ariz. 184, 124 P.2d 768 (1942). Neither A.R.S. § 41–192 nor § 38–848(K) contain any provision that can reasonably be interpreted to grant any such power. A.R.S. § 38–848(K) implies that the attorney for the fund manager shall be either the attorney general or an attorney approved by the attorney general, and that once the choice between those two alternatives has been made, the counsel that has been selected is thereafter the only counsel who "shall represent the fund manager in any legal proceeding." There is no legal basis on which to hybridize the fund manager's legal representation as the attorney general seeks to do. Moreover, the attorney general's interpretation of the statute would burden any private attorney or firm retained by the fund manager with a continuing ethical conflict between his duty to hold inviolate the confidences of his client and the need to disclose such information to the attorney general in aid of the attorney general's asserted supervisory function. Outside counsel's ethical dilemma would remain constant even assuming that normal conflict of interest rules do not apply to attorneys general. Further, the attorney general surely need not supervise outside counsel in order to "coordinate the legal services required by other departments of this state or other state agencies" as required by A.R.S. § 41–192(A)(3).

Accordingly, we hold that the conditions the attorney general sought to impose on

outside representation of the fund manager in the instant case are beyond his authority.

*Conclusion*

In summary, we hold that the fund manager has discretion to choose whether to hire outside counsel, and that the attorney general may not impose restrictive supervisory conditions upon the fund manager's use of outside counsel. The fund manager, being a state agency which expends public monies, must comply with Arizona's procurement code. We remand for the trial court to determine whether the code was complied with before the fund manager hired Eaton Lazarus as its outside counsel.

GRANT and SHELLEY, JJ., concur.