778 P.2d 1244

The FUND MANAGER, PUBLIC SAFETY PERSONNEL RETIREMENT SYSTEM, Plaintiff–Appellee,

v.

Robert K. CORBIN, Attorney General of the State of Arizona, Defendant–Appellant.

The STATE of Arizona, Plaintiff–Appellant,

v.

EATON, LAZARUS, DODGE AND LOWRY, LTD., a professional corporation, Defendant–Appellee.

Nos. 1 CA–CIV 9739, 1 CA–CIV 9667.

Court of Appeals of Arizona, Division 1, Department B.

Aug. 2, 1988.

Review Granted March 13, 1989.

**350**

Robert K. Corbin, Atty. Gen. by Anthony B. Ching, Sol. Gen., Phoenix, for defendant-appellant Robert K. Corbin and plaintiff-appellant State of Ariz.

Eaton, Lazarus, Dodge & Lowry, Ltd. by David D. Dodge, Marc R. Lieberman, G. Eric Nielson, Phoenix, for plaintiff-appellee Fund Manager, Public Safety Personnel Retirement System, and defendant-appellee Eaton, Lazarus, Dodge & Lowry, Ltd.

OPINION

HAIRE, Judge.

The appeal in 1 CA–CIV 9739 is from summary judgment entered in superior court cause no. C–565072 in favor of The Fund Manager of the Public Safety Personnel Retirement System (Fund Manager) after proceedings directed by this court in *Fund Manager v. Superior Court,* 152 Ariz. 255, 731 P.2d 620 (App.1986). The parties in that appeal have raised the following issues:

1. Whether appellant Robert K. Corbin, Attorney General of the State of Arizona (Attorney General), has "standing" or legal authority to challenge the constitutionality of an enactment of the Arizona legislature;

2. Whether Laws 1987, ch. 180 (SB 1098) retroactively exempts the Fund Manager from the duty to comply with the provisions of the Arizona Procurement Code, A.R.S. §§ 41–2501 to –2652 (Supp.1987);

3. Whether § 3 of SB 1098, which purports to make the enactment retroactive, is unconstitutional because:

(a) the title to SB 1098 does not mention retroactivity, in violation of Ariz. Const. art. 4, pt. 2, § 13;

(b) retroactively applied, SB 1098 is a special law remitting a fine, penalty, or forfeiture or relinquishing an indebtedness to the state, in violation of Ariz. Const. art. 4, pt. 2, §§ 19(14) and 19(18);

(c) retroactively applied, SB 1098 unconstitutionally impairs vested rights and invades the province of the judiciary;

(d) retroactively applied, SB 1098 constitutes a donation to an individual, association, or corporation, in violation of Ariz. Const. art. 9, § 7;

(e) retroactively applied, SB 1098 is not "curative" legislation, and even if it were, that fact would not excuse any constitutional violation.

The appeal in 1 CA–CIV 9667 is from an order entered in superior court cause no. CV–87–10301, dismissing without prejudice

the State of Arizona's action against Eaton, Lazarus, Dodge & Lowry, Ltd. (Eaton Lazarus), for recovery of certain allegedly illegal payments of public monies made by the Fund Manager to Eaton Lazarus. By order of this court, these two appeals were consolidated for hearing and disposition.

Although the parties in 1 CA–CIV 9667 have also briefed numerous issues, the state has conceded that if the Attorney General's appeal in 1 CA–CIV 9739 is unsuccessful, the state's appeal in 1 CA–CIV 9667 must also fail. Therefore, because we affirm the judgment in 1 CA–CIV 9739, we do not address the issues raised in 1 CA–CIV 9667.

## BACKGROUND AND PROCEDURAL HISTORY

This court's opinion in *Fund Manager v. Superior Court* establishes the background for both appeals. We first briefly summarize that opinion, supplementing it where appropriate.

The Fund Manager is a five-member body that is charged by A.R.S. § 38–848 with managing the Public Safety Personnel Retirement System (System). The System was initially created by Laws 1968, ch. 85. Before July 1980, the Attorney General was the exclusive legal representative of the Fund Manager. In July 1980, the legislature amended § 38–848(J) (now § 38–848(M)) to add the capitalized language:

> "The attorney general OR AN ATTORNEY APPROVED BY THE ATTORNEY GENERAL AND PAID BY THE FUND shall be the attorney for the fund manager and shall represent the fund manager in any legal proceeding." *See* Laws 1980, ch. 146.

In January 1981, the Fund Manager hired a private law firm to act as its legal counsel and sought the Attorney General's approval. The Attorney General notified the Fund Manager that he would not approve the firm because it had not been selected in accordance with the competitive bidding procedures then codified at A.R.S. §§ 41–1051 to –1056 (repealed and replaced with the Arizona Procurement Code, A.R.S.

§§ 41–2501 to –2652, effective January 1, 1985). After complying with those procedures the Fund Manager retained the same firm subject to the Attorney General's approval, which was granted on June 24, 1981.

In the spring of 1985, unaware of the new procurement code, the Fund Manager solicited new bids for legal counsel under the old procedures. Through that process, the Fund Manager chose its current counsel, Eaton Lazarus.

The Fund Manager then asked the Attorney General to approve its choice. The Attorney General declined to do so, stating that the Fund Manager had failed to comply with certain provisions of the procurement code and related regulations. The Attorney General also informed the Fund Manager that once the procurement code and applicable rules had been complied with, the Attorney General's approval would be subject to three conditions: that outside counsel be required to submit opinions and advice to the Attorney General for review and forwarding to the Fund Manager; that outside counsel not initiate litigation on behalf of the Fund Manager or appeal any decisions rendered against it without the Attorney General's approval; and that the contract with outside counsel be terminable June 30, 1986, after which the Attorney General would consider whether to resume his own representation of the Fund Manager.

After further exchanges, during which the Attorney General's office informed the Fund Manager that it was prepared to seek to enjoin the Fund Manager from compensating Eaton Lazarus for legal representation, the Fund Manager filed a superior court special action (cause no. C–565072) against the Attorney General, seeking extraordinary, declaratory, and injunctive relief. The trial court held that the Fund Manager was subject to the procurement code; that the right to decide whether the Attorney General or private counsel would represent the Fund Manager belonged to the Attorney General; and that the Attorney General's decision to represent the Fund Manager was within his statutory

authority and could not be an abuse of discretion.

The Fund Manager then petitioned this court for special action relief. This court accepted jurisdiction and held that: (1) the Attorney General could approve or disapprove the Fund Manager's choice of outside counsel, but not its decision to employ outside counsel; (2) the Attorney General had no authority to impose restrictive conditions upon the Fund Manager's use of outside counsel; and (3) the Fund Manager was obligated to comply with the procurement code before expending public monies. 152 Ariz. at 258–60, 731 P.2d at 623–25. The court remanded to the trial court "to determine whether the [procurement] code was complied with before the fund manager hired Eaton Lazarus as its outside counsel." 152 Ariz. at 261, 731 P.2d at 626.

While a petition for review was pending in the Arizona Supreme Court, the Fund Manager again asked the Attorney General to approve Eaton Lazarus as the Fund Manager's counsel. On January 27, 1987, the Attorney General informed the Fund Manager that it had substantially and adequately complied with all procurement code provisions in hiring Eaton Lazarus except the requirement of A.R.S. § 41–2513(C) that payment for outside professional services not be made unless "pursuant to a fully approved written contract." The Attorney General specified the areas in which the contract previously submitted was deficient and told the Fund Manager that he would approve a contract that cured the specified deficiencies.

On January 28, 1987, the Arizona Supreme Court denied review of this court's opinion in *Fund Manager v. Superior Court.* On January 30, 1987, the Fund Manager sent the Attorney General a contract revised in accordance with the Attorney General's specifications. On March 12, 1987, the Attorney General formally approved the revised contract retroactive to February 18, 1987.

Before Judge Sargeant on remand, the Attorney General and the Fund Manager prepared cross-motions for summary judgment on the question of whether the Fund Manager had complied with the procurement code before initially hiring Eaton Lazarus. On April 15, 1987, before briefing in that matter was complete, the Attorney General filed a separate action (cause no. CV–87–10301) on behalf of the state against Eaton Lazarus. That case was assigned to Judge Riddel. The complaint alleged that the Fund Manager had hired Eaton Lazarus without complying with the provisions of the procurement code and that all payments it had made to Eaton Lazarus before February 18, 1987, were therefore illegal expenditures of public funds. The complaint sought recovery of these funds plus a twenty percent penalty, pursuant to A.R.S. § 35–212.[1]

On April 21, 1987, Eaton Lazarus filed an alternative motion to dismiss the state's action or to consolidate it with the remanded Fund Manager's action against the Attorney General. In support of the motion, Eaton Lazarus argued that because the two pending actions presented common questions of law and fact, no "justiciable controversy" existed in the state's action against Eaton Lazarus.

On April 27, 1987, before briefing was complete on either the cross-motions for summary judgment in the Fund Manager's action or Eaton Lazarus' motion to dismiss the state's action, SB 1098 was enacted and became effective. Among other things,

---

1. A.R.S. § 35–212 provides:
 "A. The attorney general in his discretion may bring an action in the name of the state to enjoin the illegal payment of public monies, including violations of § 11–952 and title 41, chapter 23 [the procurement code], or if the monies have been paid, to recover such monies plus twenty per cent of such amount together with interest and costs, including reasonable attorney fees, to be paid to the state treasurer or other appropriate official to the credit of the fund from which the payment was made.
 "B. As used in this section "public monies" includes all monies coming into the lawful possession, custody or control of state agencies, boards, commissions or departments or a state officer, employee or agent in his official capacity, irrespective of the source from which, or the manner in which, the monies are received."

§ 1 of SB 1098 added a new subsection (L) to A.R.S. § 38–848, providing:

> "The fund manager, the administrator and all persons employed by them are not under the jurisdiction of the department of administration or subject to section 38–611 or title 41, chapter 4, articles 5 and 6. The salaries of the administrator and other employees of the fund manager are the sole determination of the fund manager. *Contracts for goods and services approved by the fund manager are not subject to title 41, chapter 23 [the procurement code]."* (Emphasis added.)

Section 2 of SB 1098 added a new subsection (T) to A.R.S. § 41–2501, providing:

> "Contracts for goods and services approved by the fund manager of the public safety personnel retirement system are exempt from the provisions of this chapter."

Section 3 of SB 1098 provided:

> *"Retroactivity*
>
> Section 38–848, Arizona Revised Statutes, as amended by this act, is effective retroactively to July 1, 1968."

After argument on Eaton Lazarus' motion to dismiss, Judge Riddel determined that the court was "without jurisdiction at this time to consider this matter" and dismissed the state's complaint without prejudice. The state thereafter timely commenced the appeal docketed in this court as 1 CA–CIV 9667.

Meanwhile, in the remanded Fund Manager's action, the parties submitted supplemental memoranda discussing the interpretation of SB 1098 and its conformance with various provisions of the Arizona Constitution. Judge Sargeant ultimately denied the Attorney General's motion for summary judgment and granted the Fund Manager's. He reasoned as follows:

> "Although the question remanded by the Court of Appeals was whether the Fund Manager had complied with the Procurement Code and although this court would find that there was not compliance, the issue was rendered moot by the passage of S.B. 1098 which was effective April 27, 1987 and renders that question moot so long as the statute is constitutional with respect to its retroactive application to July 1, 1968. The supplemental memoranda of counsel addressed this point.
>
> "The Court finds that the statute is curative in nature, not designed to bestow a gift and not unconstitutionally vague. Further, the statute, in its retroactive application, does not impair vested rights nor does it divest the Court of constitutionally mandated powers.
>
> "The well recognized presumption of constitutionality and the heavy burden of proof placed upon the Attorney General combine to defeat defendant's argument of unconstitutionality."

Judge Sargeant entered formal judgment in accordance with this ruling, and the Attorney General timely commenced the appeal docketed in this court as 1 CA–CIV 9739.

## THE APPEAL IN 1 CA–CIV 9739

### *Motion to Dismiss*

Before briefing in this appeal, the Fund Manager filed a motion to dismiss the appeal on the ground that the Attorney General lacked "standing" to challenge the constitutionality of SB 1098. This court took the motion to dismiss under advisement for consideration with the appeal on the merits. We now address that motion.

The Fund Manager notes that the Arizona Attorney General has no common law powers and argues that because no Arizona statute expressly authorizes the Attorney General to challenge the constitutionality of a state statute, he cannot do so. The Fund Manager characterizes the question as one of first impression in Arizona and relies primarily on *State v. Burning Tree Club*, 301 Md. 9, 481 A.2d 785 (1984), and *State Public Intervenor v. Wisconsin Department of Natural Resources*, 115 Wis.2d 28, 339 N.W.2d 324 (1983).

In response, the Attorney General cites numerous Arizona decisions in which the Arizona courts have permitted his office to challenge the constitutionality of state statutes. Further, he asserts that it is his duty

to uphold both the laws and the constitution of Arizona and that in challenging an Arizona statute as violative of the Arizona Constitution, he is merely executing that duty. Finally, he notes that A.R.S. § 35–212 empowers him to seek recovery of public monies illegally paid and argues that as part of this power he may challenge the constitutionality of a retroactivity clause that would permit the retention of public monies illegally received.

■ It is settled that the Arizona Attorney General has no common law powers and that whatever powers he possesses must be found in the Arizona Constitution or the Arizona statutes. *Gershon v. Broomfield*, 131 Ariz. 507, 642 P.2d 852 (1982); *State ex rel. Morrison v. Thomas*, 80 Ariz. 327, 297 P.2d 624 (1956); *Fund Manager v. Superior Court*, 152 Ariz. at 260, 731 P.2d at 625. *See* Ariz. Const. art. 5, § 1. Furthermore, we agree with the Fund Manager that the Attorney General has a duty to uphold the constitutionality of enactments of the Arizona legislature.

■ However, as "chief legal officer of the state," A.R.S. § 41–192(A), the Attorney General also has a duty to uphold the Arizona and United States Constitutions. *Cf.* Ariz. Const. art. 2, § 3 ("The Constitution of the United States is the supreme law of the land"); Ariz. Const. art. 2, § 32 ("The provisions of this Constitution are mandatory, unless by express words they are declared to be otherwise"). As the court stated in *People v. Pollution Control Board*, 83 Ill.App.3d 802, 38 Ill.Dec. 928, 404 N.E.2d 352 (1980):

"We are ... not persuaded by the contention that the Attorney General lacks standing to challenge the constitutionality of this statute because he is under a duty to defend statutes passed by the General Assembly and signed into law by the governor. We believe the Attorney General's duty to defend the constitution necessarily encompasses a duty to chal-

lenge, on behalf of the public, a statute which the Attorney General regards as constitutionally infirm." 83 Ill.App.3d at 806, 38 Ill.Dec. at 931, 404 N.E.2d at 355.[2]

■ Moreover, we are aware of nothing that would disable the Attorney General from attacking the constitutionality of an Arizona statute in the process of exercising his specific statutory powers. The legal authority that underlies the Attorney General's positions in both the Fund Manager's and the state's actions is contained in A.R.S. § 35–212, quoted *supra* at note 1. *See Fund Manager v. Superior Court*, 152 Ariz. at 259–60, 731 P.2d at 624–25. In our opinion, the Attorney General's discretionary power under A.R.S. § 35–212(A) necessarily includes the authority to press any ethically permissible argument he deems appropriate to aid him in preventing the allegedly illegal payment of public monies or in recovering public monies alleged to have been illegally paid.

*State v. Burning Tree Club*, 301 Md. 9, 481 A.2d 785 (1984), upon which the Fund Manager relies, is inapposite. The Maryland attorney general's actions in *Burning Tree Club* were not founded on any specific statutory power or duty. Instead, he had merely sought a declaration that a particular Maryland statute was unconstitutional. The Maryland Court of Appeals noted that the attorney general did not administer that statute and had no potential exposure to liability depending on whether the statute was or was not constitutional. The court's express holding was that the attorney general's statutory and constitutional powers did not authorize him "to initiate a declaratory judgment action which challenges the constitutionality of a state statute." 301 Md. at 34, 481 A.2d at 798.

The Fund Manager's reliance on *Arizona State Land Department v. McFate*, 87 Ariz. 139, 348 P.2d 912 (1960), is similarly misplaced. In that case, the question was whether the Attorney General had "stand-

2. We cannot agree with the Fund Manager's contention that *Pollution Control Board* is inapposite because the Illinois attorney general has common law powers. Although the court in *Pollution Control Board* noted that fact, the

above-quoted portion of its holding is based solely on an express provision of the 1970 Illinois Constitution (art. XIII, para. 3), which requires the attorney general to uphold the Illinois and United States Constitutions.

ing" (legal authority) to sue on behalf of the state to enjoin the State Land Commissioner from selling certain parcels of state land. The court held that the Attorney General's assertion of a position in conflict with a state department was inconsistent with his duty as the department's legal advisor and that the initiation of litigation in furtherance of the interests of the public in general, as distinguished from the policies or practices of a particular department, was not part of the Attorney General's statutory role. 87 Ariz. at 144, 348 P.2d at 915. The court also stated, however:

> "It is recognized that there are occasions on which the Attorney General may initiate proceedings on behalf of the State, and may even appear in opposition to a particular State agency, but these instances are dependent upon specific statutory grants of power. Thus, for example ... under A.R.S. § 35-212, the Attorney General 'shall bring an action in the name of the state to enjoin the illegal payment of state money.'" 87 Ariz. at 144, 348 P.2d at 915-16.

In the present case, the Attorney General is acting pursuant to a specific grant of statutory authority.

We are also unpersuaded by *State Public Intervenor v. Wisconsin Department of Natural Resources*, 115 Wis.2d 28, 339 N.W.2d 324 (1983). In Wisconsin, as in Arizona, the attorney general's powers are strictly statutory. The "State Public Intervenor" was a member of the state attorney general's office with statutory authority to intervene in certain administrative proceedings when necessary for the protection of "public rights" in water and other natural resources and to appeal from administrative rulings in those proceedings. The Wisconsin Supreme Court held that this statutory power to intervene did not include the power to seek a declaratory judgment regarding the constitutionality of a rule adopted by the Department of Natural Resources. We find the dissent in that case more persuasive than the majority opinion. The dissenting justices stated:

> "... [S]ec. 165.07, Stats., imposes a duty on the public intervenor to intervene in proceedings when necessary to protect public rights in water and other natural resources. If a proceeding involves the adoption of an administrative rule that allegedly violates the public's constitutional rights, and those rights involve the public's rights in water, the public intervenor's duty to intervene under sec. 165.07 necessarily encompasses the duty to challenge the constitutionality of that rule if such action is necessary to protect the public rights in water. The public intervenor therefore has standing to challenge the constitutionality of NR 345." 115 Wis.2d at 46, 339 N.W.2d at 332.

■ We therefore deny the Fund Manager's motion to dismiss 1 CA–CIV 9739 and hold that the Attorney General has not exceeded his statutory authority in arguing that SB 1098 is invalid under various provisions of the Arizona Constitution. However, although we have found the motion to be without merit, we do not believe that it has unreasonably expanded or delayed the proceedings or that it is frivolous, and we therefore deny the Attorney General's request for attorney's fees under A.R.S. § 12-349(A)(3) (Supp.1987) and Rule 25, Arizona Rules of Civil Appellate Procedure.

### Interpretation of § 3 of SB 1098

■ On the merits, the Attorney General first contends that the retroactivity clause in § 3 of SB 1098 must be interpreted to apply "only to the substantive portions of the amendments to the power and duties of the Fund Manager in A.R.S. § 38–848 and not to the Procurement Code aspect of SB 1098." In support of this contention, the Attorney General notes that § 3 of SB 1098 provides that the amendments to A.R.S. § 38–848 in § 1 are effective retroactively to July 1, 1968, but makes no similar provision with respect to the amendments to A.R.S. § 41–2501 in § 2. Because A.R.S. § 1–244 provides that "[n]o statute is retroactive unless expressly declared therein," the Attorney General argues that the amendments to the procurement code contained in § 2, including the exemption for contracts for goods and services approved by the Fund Manager, are prospective only.

Concerning the clearly retroactive provisions of § 1, the Attorney General argues:

"Defendant recognizes that the amendment to A.R.S. § 38–848 contains the language 'Contracts for goods and services approved by the Fund Manager are not subject to Title 41, Chapter 23.' However, the mere insertion of a reference to Title 41, Chapter 23, which happens to be the Procurement Code, does not effectively amend the Procurement Code because Art. 4, Pt. 2, § 14 of the Arizona Constitution provides:

No Act or section thereof shall be revised or amended by mere reference to the title of such Act, but the Act or section as amended shall be set forth and published at full length."

We cannot agree with the Attorney General's analysis. By its unambiguous terms, § 3 of SB 1098 makes A.R.S. § 38–848, "as amended by this act," effective retroactively to July 1, 1968. The amendments to A.R.S. § 38–848 made by SB 1098 include not only those provisions relating to the powers and duties of the Fund Manager, but also that portion of A.R.S. § 38–848(L) providing that "[c]ontracts for goods and services approved by the fund manager are not subject to title 41, chapter 23 [the procurement code]." The latter provision is therefore retroactive to the same extent as all the other amendments to A.R.S. § 38–848 contained in § 1 of SB 1098.

Contrary to the Attorney General's argument, SB 1098's failure to state expressly that the amendment to A.R.S. § 41–2501 contained in § 2 is to be applied retroactively as well does not give rise to an "ambiguity" regarding legislative intent. The only amendment made by § 2 was the addition of A.R.S. § 41–2501(T), which provides:

"Contracts for goods and services approved by the fund manager of the public safety personnel retirement system are exempt from the provisions of this chapter."

In view of the clearly expressed retroactivity of the similar amendment to A.R.S. § 38–848, the legislature could reasonably have viewed as unnecessary an express declaration that its amendment to A.R.S. § 41–2501 was also retroactive.

It is true, as the Attorney General points out, that under Ariz. Const. art. 4, pt. 2, § 14, a mere reference to the procurement code in the section of SB 1098 that amends A.R.S. § 38–848, which is not itself part of the procurement code, could not effectively amend the procurement code. However, that proposition alone is insufficient to demonstrate that SB 1098 does not retroactively exempt the Fund Manager's contracts for goods and services from the requirements of the procurement code. That conclusion is equally dependent on establishing the questionable proposition, implicitly assumed by the Attorney General without citation to authority, that the Fund Manager's contracts could be exempted from the procurement code only by amending the procurement code itself. It seems plain, however, that new A.R.S. § 38–848(L) is sufficient to accomplish that result by itself. That amendment complies with Ariz. Const. art. 4, pt. 2, § 14 and is also expressly retroactive.

The only reasonable interpretation of SB 1098 is that contracts for goods and services approved by the Fund Manager are retroactively exempted from the requirements of the procurement code. We find no merit in the Attorney General's argument to the contrary.

### Constitutionality of § 3 of SB 1098

■ The Attorney General contends that § 3 of SB 1098, if construed to exempt contracts for goods and services approved by the Fund Manager retroactively from the requirements of the procurement code, violates various provisions of the Arizona Constitution. We address each of his arguments, bearing in mind the following language from *Hall v. A.N.R. Freight System, Inc.*, 149 Ariz. 130, 717 P.2d 434 (1986):

"We begin, as we must, with the presumption that all legislative enactments are constitutional. *State v. Cook*, 139 Ariz. 406, 678 P.2d 987 (App.1984). 'We will not declare an act of the legislature unconstitutional unless we are satisfied

beyond a reasonable doubt that the act is in conflict with the federal or state constitutions.' *Chevron Chemical Co. v. Superior Court,* 131 Ariz. 431, 438, 641 P.2d 1275, 1282 (1982). 'All statutes are presumed to be constitutional and any doubts will be resolved in favor of constitutionality.' *Arizona Downs v. Arizona Horsemen's Foundation,* 130 Ariz. 550, 554, 637 P.2d 1053, 1057 (1981). The burden of establishing that a statute is unconstitutional rests on the party challenging its validity. *State v. Arnett,* 119 Ariz. 38, 48, 579 P.2d 542, 552 (1978)." 149 Ariz. at 133, 717 P.2d at 437.

However, as the court went on to state: "at the same time 'we are bound to uphold the Arizona Constitution, and the spirit and purpose of that instrument may not be defeated.' *Selective Life Insur. Co. v. Equitable Life Assur. Soc.,* 101 Ariz. 594, 598, 422 P.2d 710, 714 (1967). The inherent duty and power of this court to determine whether a statute runs afoul of our state constitution is well established. *State Board of Barber Examiners v. Edwards,* 76 Ariz. 27, 258 P.2d 418 (1953)." 149 Ariz. at 137, 717 P.2d at 441.

### 1. Sufficiency of SB 1098's Title

The Attorney General contends that under the case law construing Ariz. Const. art. 4, pt. 2, § 13, SB 1098 § 3 is void because the title of the enactment does not mention retroactivity. Ariz. Const. art. 4, pt. 2, § 13 provides:

"Every Act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title; but if any subject shall be embraced in an Act which shall not be expressed in the title, such Act shall be void only as to so much thereof as shall not be embraced in the title."

The title to SB 1098 was as follows:

### "AN ACT

"RELATING TO PUBLIC OFFICERS AND EMPLOYEES; PRESCRIBING POWERS AND DUTIES OF THE ADMINISTRATOR OF THE PUBLIC SAFETY PERSONNEL RETIREMENT SYSTEM; PRESCRIBING AN EXEMPTION FROM THE PROCUREMENT CODE; AMENDING SECTION 38–848, ARIZONA REVISED STATUTES, AND AMENDING SECTION 41–2501, ARIZONA REVISED STATUTES, AS AMENDED BY LAWS 1987, CHAPTER 11, SECTION 1."

The Attorney General summarizes his reasoning as follows:

"1. Statutes are not retroactive unless expressly declared so by the Legislature. A.R.S. § 1–244.

"2. Retroactivity therefore does not have a 'direct or indirect' relationship with all statutes or a 'natural connection' with the usual amendments to statutes.

"3. Since retroactivity has to be expressly declared, it is discrete and of sufficient importance that it must be mentioned in the title.

"4. Unless it is expressed in the title, legislators and the public would not know from reading the title that the legislation is retroactive and would be surprised by the retroactivity. *See White v. Kaibab Road Improvement District,* 113 Ariz. 209, 550 P.2d 80 (1976)."

In our opinion, the Attorney General's reasoning unduly rigidifies the prevailing interpretation of art. 4, pt. 2, § 13 and fails to take account of its purpose. Our supreme court stated in *Industrial Development Authority v. Nelson,* 109 Ariz. 368, 509 P.2d 705 (1973):

"The constitutional provision was designed to enable the legislator upon reading the title to be advised as to what to expect in the body of the act so that he would not be surprised and enact something he did not intend. *Hernandez v. Frohmiller,* 68 Ariz. 242, 204 P.2d 854 (1949)." 109 Ariz. at 374, 509 P.2d at 711.

The supreme court has consistently held that art. 4, pt. 2, § 13 should be interpreted liberally so as to uphold the constitutionality of an act if there is any legal basis for its validity. *State ex rel. Corbin v. Pickrell,* 136 Ariz. 589, 667 P.2d 1304 (1983); *State v. Sutton,* 115 Ariz. 417, 565 P.2d

1278 (1977). The court provided a comprehensive summary of the principles for application of art. 4, pt. 2, § 13 in *Dennis v. Jordan*, 71 Ariz. 430, 229 P.2d 692 (1951). There the court stated:

"[T]hese cases and those reviewed therein hold that it is not necessary that the title be a synopsis or a complete index of the legislation that is to follow; that a title is invulnerable when it is sufficiently full and comprehensive as to indicate, in a general way at least, what is to follow in the way of legislation; that it should not be so meagre as to mislead or tend to avert inquiry as to the context thereof, and it is sufficient if the provisions of the Act relate directly or indirectly to the subject expressed in the title and have a natural connection therewith and not foreign thereto; and ' * * * the title is sufficient if it is not productive of surprise and fraud, and is not calculated to mislead the legislature or the people, but is of such character as fairly to apprise legislators, and the public in general, of the subject matter of the legislation, and of the interests that are or may be affected thereby, *and to put anyone having an interest in the subject matter on inquiry.*' (Emphasis supplied.) 50 Am.Jur., Statutes, § 167." 71 Ariz. at 439, 229 P.2d at 697–98.

The court put it still another way in *State v. Harold*, 74 Ariz. 210, 246 P.2d 178 (1952):

"[A] provision in the act which directly or indirectly relates to the subject of the title and having a natural connection therewith is properly included in the body of the act. *Ellery v. State*, 42 Ariz. 79, 22 P.2d 838 [(1933)], or if it is germane to the subject expressed in the title, it is constitutional. *In re Lewkowitz*, [70 Ariz. 325, 220 P.2d 229 (1950)]." 74 Ariz. at 214–15, 246 P.2d at 180.

In our opinion, the retroactivity clause contained in § 3 of SB 1098 relates indirectly to the subject of the title of the act and has a natural connection with it, because the clause concerns the effective date of the "exemption from the procurement code" referred to in the title. The title is certainly sufficient to fairly apprise legislators and the public of the subject matter of the legislation and would put anyone with an interest in that subject matter on inquiry as to the contents of the specific amendments and their effective dates.

Moreover, there is nothing in the title that would mislead legislators or the public or avert their further inquiry. In that regard, the title of SB 1098 sharply contrasts with that at issue in *White v. Kaibab Road Improvement District*, 113 Ariz. 209, 550 P.2d 80 (1976), upon which the Attorney General relies. In *White*, the court held an enactment unconstitutional because its title indicated that it concerned an alternate procedure for forming county improvement districts, whereas its text actually established an alternate procedure for financing improvements after a county improvement district had been formed. In our opinion, § 3 of SB 1098 is not invalidated by the lack of a reference to retroactivity in the title of the enactment.

The Court of Appeals of New Mexico has held similarly under analogous circumstances. In *Hansman v. Bernalillo County Assessor*, 95 N.M. 697, 625 P.2d 1214 (App.1980), the court stated:

"We do not dwell on petitioners' peripheral argument that the Act is unconstitutional because its title does not clearly indicate the Legislature's intention to make the repeal of § 7–36–17 retroactive. The Supreme Court said in 1964 that 'the title need not be an index of everything in the act itself, but need only give notice of the *subject matter* of the legislation * * *.' *Gallegos v. Wallace*, 74 N.M. 760, 763, 398 P.2d 982 (1964). The principle was repeated in *Re Estate of Welch*, 80 N.M. 448, 457 P.2d 380 (1969), when the court rejected appellant's argument that a statute was unconstitutional because a notice of hearing requirement did not appear in the title. The title of [the enactment] reciting, in part, that it is an act

'RELATING TO TAXATION * * * REPEALING SECTION 7–36–17, NMSA 1978 * * * [and] DECLARING AN EMERGENCY'

sufficiently establishes its subject matter, and that is all that is necessary." 95 N.M. at 699, 625 P.2d at 1216.

*Accord Southeastern Michigan Transportation Authority v. Department of Treasury,* 122 Mich.App. 92, 333 N.W.2d 14 (1982) (constitutional provision similar to Ariz. Const. art. 4, pt. 2, § 13 is not construed so narrowly as to invalidate retroactivity clause for failure to mention retroactivity in title of enactment). We find the decisions from Alabama, Pennsylvania, and Texas, upon which the Attorney General relies, to be distinguishable or unpersuasive. *See Ex parte West Point Pepperell,* 495 So.2d 681 (Ala.1986); *Wallace v. Ball,* 205 Ala. 623, 88 So. 442 (1921); *Commonwealth v. Rockwell Manufacturing Company,* 392 Pa. 339, 140 A.2d 854 (1958); *City of San Antonio v. Handley,* 308 S.W.2d 608 (Tex.Civ.App.1957). We conclude that § 3 of SB 1098 is not invalid under Ariz. Const. art. 4, pt. 2, § 13.

### 2. Special Legislation

■ The Attorney General next contends that § 3 of SB 1098 is a special law violative of Ariz. Const. art. 4, pt. 2, § 19(14) and (18). That provision states:

"No local or special laws shall be enacted in any of the following cases, that is to say:

. . . .

"14. Remitting fines, penalties, and forfeitures.

. . . .

"18. Relinquishing any indebtedness, liability, or obligation to this State."

The Attorney General concedes that, as far as §§ 1 and 2 are concerned, SB 1098 is a general law. He asserts, however, that the retroactivity clause of § 3 in fact addresses only two specific past events and has no general application to the future. Because the effect of § 3 in the two particular cases to which he refers would be in part to remit a penalty or relinquish an indebtedness to the state, the Attorney General concludes that § 3 is unconstitutional under art. 4, pt. 2, § 19. We disagree.

Initially, we seriously question whether § 3 can rationally be considered apart from § 1. It is the amendments to A.R.S. § 38-848 that comprise the legislature's substantive enactment; § 3 merely specifies the date after which those amendments would be operative. Accordingly, the enactment accomplished by §§ 1 and 3, considered together, operated not only during the period from July 1, 1968, until the date on which SB 1098 was adopted, but also thereafter into the indefinite future in exactly the same ways.

For that reason, this case is far more closely analogous to *Arizona Downs v. Arizona Horsemen's Foundation,* 130 Ariz. 550, 637 P.2d 1053 (1981), than to *Barbee v. Holbrook,* 91 Ariz. 263, 371 P.2d 886 (1962), upon which the Attorney General relies. In *Barbee,* the act in question required the Santa Cruz County Board of Supervisors to reimburse its individual members in the exact amount of a judgment previously recovered against them on behalf of the county. The court held that the act was a special law and that, because the prior judgment included a twenty percent penalty provided by law, the act was void under art. 4, pt. 2, § 19(14). Unlike §§ 1 and 3 of SB 1098, the act in *Barbee* applied neither generally nor prospectively.

In *Arizona Downs,* the Arizona Supreme Court considered an attack on A.R.S. § 5-110(A), which granted a preference to racing permittees for the same "racing days" allotted to them during the preceding year. Arizona Horsemen's Association, whose applications for a permit had been denied because all available racing dates were allocated to long-time permittees, Arizona Downs and Turf Paradise, Inc., challenged the statutory preference as special legislation. In upholding the statute, the court stated:

"A law is general, and thus permissible, if it confers rights and privileges or imposes restrictions upon all members of a given class, when the classification has a reasonable basis. A special law applies only to certain members of a class or to an arbitrarily defined class which is not rationally related to a legitimate legislative purpose. If a statute is plainly in-

tended for a particular case and looks to no broader application in the future, it is a special law. But a law is not special simply because it may have only a limited application. Such a law will be general if it applies to all cases and to all members of the specified class to which the law is made applicable." 130 Ariz. at 557–58, 637 P.2d at 1060–61 (citations omitted).

*Arizona Downs* demonstrates that if a statute is of general application by its terms, the fact that its initial application concerned a finite number of known specific individuals or companies will not render it a "special law" under art. 4, pt. 2, § 19, so long as it may have a potentially broader application in the future. Therefore, even assuming that §§ 1 and 3 of SB 1098 applied only to specific known individuals at the time of enactment,[3] those provisions plainly do not constitute a special law under the *Arizona Downs* analysis. The amendments to A.R.S. § 38–848 adjust and expand the Fund Manager's contracting powers with respect to all actuaries, auditors, investment counsel, legal counsel, and security safeguarding services and remove all its employees from the jurisdiction of the Department of Administration. *See* new A.R.S. § 38–848(J)(7), (K)(6), and (L).

In addition, the amendments apply, not merely with respect to a definite period of time in the past, but for all time after July 1, 1968, on into the future. Their application is limited neither to certain members of a class nor to an arbitrarily defined class not rationally related to a legitimate legislative purpose. Instead, they operate on all members of rationally drawn classifications, both retrospectively and prospectively. *See also Schrey v. Allison Steel Mfg. Co.*, 75 Ariz. 282, 255 P.2d 604 (1953); *Hazas v. State*, 25 Ariz. 453, 219 P. 229 (1923); *Browning v. Corbett*, 153 Ariz. 74, 734

P.2d 1030 (App.1986); *State v. Christi*, 149 Ariz. 323, 718 P.2d 487 (App.1986).

*Puterbaugh v. Gila County*, 45 Ariz. 557, 46 P.2d 1064 (1935), does not require a different conclusion. Unlike the statutes in question in *Arizona Downs* and in this case, the statute in issue in *Puterbaugh*, though drawn in general terms, had no genuine foreseeable prospective effect. In fact it operated only to prevent the continuation of a particular court action. The statute in *Puterbaugh* was unquestionably a "special law." We conclude, however, that the same is not true of SB 1098.

### 3. Invasion of the Province of the Judiciary

■ Again relying on *Puterbaugh*, the Attorney General contends that the retroactivity clause of § 3 unconstitutionally invades the province of the judiciary. Again we disagree. Gila County sued the *Puterbaugh* defendants, three members of the Gila County Board of Supervisors, to recover expense reimbursements that they had allegedly made to themselves illegally. On appeal from the judgment entered against them, the defendants argued that the trial court had erred in denying their motion to dismiss the action for "lack of jurisdiction" based on Laws 1933, Ch. 74, which provided:

"Section 1. No action shall be instituted or maintained under Sections 790 and 791, Revised Code of Arizona, 1928, to recover any actual and necessary expenses and mileage paid county officers prior to November 23, 1932.

"Sec. 2. Nothing herein contained shall be construed to repeal Sections 790 and 791, Revised Code of Arizona, 1928, and except as herein expressly modified said sections shall remain in full force and effect."

---

**3.** The Attorney General supports this assertion by reference to affidavits of the state purchasing administrator in the Arizona Department of Administration and of the assistant attorney general assigned to advise the Department of Administration concerning the procurement code, stating that neither had any knowledge of alleged procurement code violations by the Fund Man-

ager other than those that are the subject of the instant litigation. He supplies no basis for concluding, however, that the retroactive application of the amendment to A.R.S. § 38–848 made by § 1 of SB 1098 affected only those persons or cases of which the Department of Administration or the Attorney General was actually aware.

The supreme court held that this statute violated Ariz. Const. art. 3 because it invaded the province of the judiciary. The court stated:

> "If the legislature has given a right of action it may, of course, unless prevented by some constitutional provision, repeal the law which gives that right of action, so long as rights have not vested thereunder, and if the right of action itself fails, naturally the remedy falls with it. But where, as in the present case, the legislature has not tried to take away the right of action itself, and indeed has expressly, by chapter 74 *supra*, continued in force those provisions of the Code which give that right, and merely attempts to prohibit the court from hearing certain particular suits brought by virtue of those sections, we are of the opinion that it is clearly an attempted invasion by the legislature of the functions of the judicial branch of the government." 45 Ariz. at 562–63, 46 P.2d at 1066.

Contrary to the Attorney General's argument, however, the retroactivity provision of SB 1098 does not prohibit the court from hearing certain particular suits while preserving the general right of action in other similar cases. SB 1098 did not take away the courts' jurisdiction to consider particular claims. Instead, it took away one of the substantive legal bases upon which the Attorney General, in this case or any other, might hope to prevail on a claim for relief under A.R.S. § 35–212. The latter is not prohibited under *Puterbaugh*'s interpretation of Ariz. Const. art. 3.

#### 4. Impairment of Vested Rights

We also reject the view that §§ 1 and 3 of SB 1098 operate to impair "vested rights" of the System's statutory beneficiaries.[4] *Hall v. A.N.R. Freight System, Inc.*, 149 Ariz. 130, 717 P.2d 434 (1986), upon which the Attorney General evidently relies for this proposition, does not support it.

In *Hall*, our supreme court considered whether the comparative negligence provisions of the new Uniform Contribution Among Tortfeasors Act could be applied to a claim for personal injury that arose prior to the act's effective date. The court recognized that the defense of contributory negligence as an absolute bar to recovery was a substantive legal right, which, once vested, could not constitutionally be impaired. In considering when the right to assert this affirmative defense became vested, however, the court characterized it as "merely an inchoate right which cannot be asserted ... until the plaintiff has filed his lawsuit." 149 Ariz. at 140, 717 P.2d at 444. Because the lawsuit in *Hall* was not filed until after the effective date of the act, the court went on to hold that the application of the new comparative negligence rules did not disturb any vested right of the defendant.

We agree with the Attorney General that in retroactively eliminating the legal basis upon which certain payments of public monies were prohibited, SB 1098 impairs a substantive, rather than procedural right. Nevertheless, the decision in *Hall* does not support the Attorney General's suggestion that the right immediately "vested," without adjudication, as soon as the Attorney General filed suit against Eaton Lazarus under A.R.S. § 35–212. The filing of the complaint in that action did not render fixed and immutable any right to a judicial determination that such payments were in fact illegal.

We considered an analogous situation in *Brown Wholesale Electric Company v. H.S. Lastar Company*, 152 Ariz. 90, 730 P.2d 267 (App.1986). Brown Wholesale sued on a contractor's license bond to recover for materials that it had furnished on a non-residential public works project. When the contractor originally posted the bond, the statutory scheme required regulation of all construction projects, whether commercial or residential. After Brown Wholesale had delivered the materials in question, however, the statutes were

---

**4.** For purposes of this discussion, we assume, without deciding, that the right in question here—the right to recover public funds received in violation of the requirements of the procurement code—belongs to the System's statutory beneficiaries rather than to the state.

amended so that the contractor's bond was subject only to claims based on residential construction contracts. In reversing the trial court's entry of summary judgment for Brown Wholesale, we held that even though the cause of action arose before the statutes were amended, retroactive application would impair no vested rights:

> "Our supreme court recently again acknowledged the proposition that any right conferred by statute may be taken away by statute before it has become vested. *Hall v. A.N.R. Freight System, Inc.,* 149 Ariz. 130, 717 P.2d 434 (1986). After considering the nature of Brown Wholesale's claim, we conclude that application of the amended statute does not impair any vested right for the fundamental reason that Brown Wholesale did not have a vested right at the time the amended statute became effective. Brown Wholesale's claim for recovery against the bond is solely a creation of and dependent on the existence of a statute. There is a general rule of law that an action wholly dependent on the existence of a statute abates if the statute is repealed without a savings clause before judgment is final. A cause of action depending solely on statute is not a vested right protected by the Constitution." 152 Ariz. at 95, 730 P.2d at 272 (citations omitted).

Because Brown Wholesale had not obtained a final judgment when the statutes were amended, it had no vested right to recover against the bond.

Similarly, the right to recover in the instant case depended upon a particular statutory scheme—one that defined the conditions and procedures under which the Fund Manager could make payments for employee and outside services. When SB 1098 became law, no final judgment had yet been entered in either the Fund Manager's action against the Attorney General or the state's action against Eaton Lazarus. Consequently, application of the procurement code exemption in those cases impaired no vested rights.

We do not read *Puterbaugh* to be inconsistent with our holding on this point. In considering whether the enactment in that case was special legislation, the supreme court said:

> "It is undoubtedly true, both as a matter of statute and as a matter of common law, that when any person receives from the state or county treasury money to which he is not entitled as a matter of law, that he immediately becomes indebted to the state or county in the amount which he has thus illegally received." 45 Ariz. at 564, 46 P.2d at 1067.

In *Puterbaugh*, however, the challenged legislation left intact the statutory basis on which the illegality of the payments was determined and merely purported to surrender the state's right to recover them. In this case, SB 1098 has changed *ab initio* and across the board, the entire substantive basis upon which the Fund Manager's expenditures could ever have been determined to be "illegal." We conclude that the retroactivity provision in § 3 of SB 1098, as applied in this case, impairs no constitutionally protected vested rights.

### 5. Donation of Public Monies

■ Finally, we consider the Attorney General's argument that retroactive application of SB 1098's amendments to A.R.S. § 38–848 constitutes the making of a donation to an individual, association, or corporation in violation of Ariz. Const. art. 9, § 7, which provides:

> "Neither the State, nor any county, city, town, municipality, or other subdivision of the State shall ever give or loan its credit in the aid of, or make any donation or grant, by subsidy or otherwise, to any individual, association, or corporation, or become a subscriber to, or a shareholder in, any company or corporation, or become a joint owner with any person, company, or corporation, except as to such ownerships as may accrue to the State by operation or provision of law."

The Attorney General contends that because the only purpose of the retroactivity clause in § 3 of SB 1098 is the relinquishment of a debt or obligation to the state,

presumably under A.R.S. § 35–211,[5] it amounts to a donation of the "illegal" payments made by the Fund Manager to Eaton Lazarus and therefore violates art. 9, § 7. We cannot agree.

The Attorney General's analysis depends on the false proposition that before the enactment of SB 1098, there existed a concrete, vested claim in favor of the state for recovery of all payments that the Fund Manager had previously made without complying with the procurement code. However, as we held in our discussion of vested rights, *supra* at 1257–1258, no vested right in the return of any of those monies could be acquired until the entry of final judgment on the claim. SB 1098, enacted and effective before the entry of any final judgment, therefore did not effect a donation prohibited by art. 9, § 7.

Further, even assuming that SB 1098 operated to confer a concrete benefit on private parties, the Arizona courts have long recognized that art. 9, § 7 does not preclude the legislature from satisfying a moral obligation based on equity and justice. *Udall v. State Loan Board*, 35 Ariz. 1, 273 P. 721 (1929); *Fairfield v. Huntington*, 23 Ariz. 528, 205 P. 814 (1922). As the court stated in *Fairfield:*

> "Parting with money or other thing of value to satisfy a moral or equitable claim, when such action could not be compelled in law, is not making a donation any more than the voluntary payment of a note barred by limitation would be; it is rather the discharge of an honest and just obligation." 23 Ariz. at 534, 205 P. at 816.

In this case, the allegedly illegal payments were made as compensation for services rendered to the Fund Manager. It may be that, absent SB 1098, Eaton Lazarus would have had no enforceable claim against the Fund Manager on a theory of *quantum meruit. See Blue Ridge Sewer Improvement District v. Lowry and Associates, Inc.,* 149 Ariz. 373, 718 P.2d 1026 (App. 1986); *Maucher v. City of Eloy,* 145 Ariz. 335, 701 P.2d 593 (App.1985). *But see Town of Holbrook v. Girand,* 52 Ariz. 291, 80 P.2d 695 (1938); *Yuma County v. Hanneman,* 42 Ariz. 561, 28 P.2d 622 (1934); *County of Greenlee v. Webster,* 30 Ariz. 245, 246 P. 543 (1926). Nevertheless, the Attorney General has cited no authority for the proposition that the legislature itself could not accomplish effectively the same result, after the services had actually been paid for, through an enactment founded on a perceived moral obligation within *Udall* and *Fairfield.*

### 6. "Curative" Legislation

Having found no constitutional infirmity in SB 1098, we need not address the Attorney General's arguments concerning whether the trial court erred in characterizing the enactment as "curative" or whether that label, if correct, would excuse any constitutional violations.

### CONCLUSION

In summary, A.R.S. § 38–848, as amended, retroactively exempts contracts approved by the Fund Manager from the requirements of the procurement code. We have found no constitutional impediment to the retroactivity provision of the statute, or to its application to the Fund Manager's contract with Eaton Lazarus. Accordingly, we affirm the trial court's entry of summary judgment in favor of the Fund Manager.

The state has conceded that the appeal from the dismissal of its suit against Eaton Lazarus must fail if the judgment in favor of the Fund Manager is affirmed. The appeal in 1 CA–CIV 9667 is therefore dismissed.

---

5. A.R.S. § 35–211 provides:
"When any person who is obligated to approve, audit, allow or pay claims or demands upon the state, approves, audits, allows or pays, or consents to, or connives at, approving, auditing, allowing or paying a claim or demand against the state not authorized by law, such person, and the person in whose favor the claim or demand was made, shall be liable for any funds procured in such manner, plus twenty per cent of such amount and legal interest upon the amount paid from the date of payment."

**364**

### Attorney's Fees

 The Fund Manager has requested an award of attorney's fees incurred on appeal pursuant to A.R.S. § 12–341.01(A), which allows a court to award attorney's fees to a prevailing party in "any contested action arising out of a contract." Notwithstanding the Attorney General's argument to the contrary, the cause of action in 1 CA–CIV 9739 does indeed arise out of a contract. *See Marcus v. Fox*, 150 Ariz. 333, 723 P.2d 682 (1986); *ASH, Inc. v. Mesa Unified School District*, 138 Ariz. 190, 673 P.2d 934 (App.1983). *Compare Morris v. Achen Construction Company*, 155 Ariz. 512, 747 P.2d 1211 (1987) (where claim was that defendant had fraudulently induced plaintiff to contract with a third party, action did not arise out of contract because there was no contention, *as between the parties to the litigation*, that any contract was invalid). In the exercise of our discretion, we grant the Fund Manager's request for attorney's fees in an amount to be determined upon compliance with Rule 21(c), Arizona Rules of Civil Appellate Procedure.

In 1 CA–CIV 9667, Eaton Lazarus has requested an award of attorney's fees incurred both in the trial court and on appeal pursuant to A.R.S. § 12–348(A)(1), which provides that "a court shall award fees and other expenses to any party other than this state which prevails by an adjudication on the merits in ... a civil action brought by the state against the party." Because Eaton Lazarus has not prevailed by an adjudication on the merits, it is not entitled to its attorney's fees in 1 CA–CIV 9667. *See State ex rel. Corbin v. Challenge, Inc.*, 151 Ariz. 20, 725 P.2d 727 (App.1986).

The judgment in 1 CA–CIV 9739 is affirmed. The appeal in 1 CA–CIV 9667 is dismissed.

GREER, P.J., and CORCORAN, J., concur.