[Civil No. 3989. Filed June 6, 1938.]

[79 Pac. (2d) 961.]

J. J. TAYLOR, W. R. WAYLAND and J. J. DURKIN, Petitioners, v. ANA FROHMILLER, as State Auditor of the State of Arizona, Respondent.

Mr. George D. Locke, for Petitioners.

Mr. Joe Conway, Attorney General of Arizona, and Mr. Earl Anderson, Special Assistant Attorney General, for Respondent.

LOCKWOOD, J.—J. J. Taylor, W. R. Wayland and J. J. Durkin, hereinafter called plaintiffs, filed this original petition for a writ of *mandamus* against Ana Frohmiller, state auditor, hereinafter called defendant, praying that she be required to approve certain

claims for the salary of petitioners, as members of the Unemployment Compensation Commission, which they claimed under section 6 of chapter 68 of the regular session of the thirteenth legislature. The petition set up, in substance, that they had been appointed as members of the Unemployment Compensation Commission, and that by section 6 of chapter 68, *supra,* they were entitled to salaries from July 1, 1937, to December 31, 1937, in the amount set up in their respective claims, but that defendant had refused to approve such claims. Defendant answered, admitting the filing of the claim, and that she had refused to audit or approve it for the reason that section 6 of chapter 68, *supra,* was unconstitutional, as being in violation of sections 13 and 14 of part 2, article 4 of the Constitution of Arizona. The facts are not in dispute, and may be stated as follows:

In its first special session, 1936, the twelfth legislature adopted chapter 13, being what is commonly called the unemployment compensation law. Section 10 of said chapter reads as follows:

*"Unemployment Compensation Commission.* (a) Organization. There is hereby created a commission of three members to be known as the Unemployment Compensation Commission of Arizona. The members of the commission shall be appointed by the Governor and shall hold office co-terminous with the term of the Governor.

"(b) Quorum. Any two members of the Commission shall constitute a quorum. No vacancy shall impair the right of the remaining commissioners to exercise all of the powers of the commission.

"(c) Divisions. The commission shall establish and supervise the conduct of two coordinate divisions: The Arizona State Employment Service Division created pursuant to Section 12 of this Act, and the Unemployment Compensation Division. Each division shall be responsible for the discharge of its distinctive functions. Each division shall be a separate adminis-

trative unit with respect to personnel, budget, and duties, except *insofar* as the commission may find that such separation is impracticable. The commission is authorized to appoint, fix the compensation of, and prescribe the duties of the director of the Unemployment Compensation Division, provided that such appointment shall be made on a non-partisan merit basis, in accordance with the provisions of this Act relating to personnel.''

It will be seen that subdivision (a) of the section creates a commission of three members, and provides that they shall hold office co-terminous with the governor who appoints them, but fails entirely to provide for any salaries for them. In 1937, the thirteenth legislature concluded that chapter 13, *supra,* needed amendment in a number of particulars, and it adopted chapter 68 at its regular session in that year. This chapter bears the following title: ''An Act Relating to Unemployment Compensation, and Amending Sections 3, 4, 5, 6, 7, 12, 18, 19, and 22, Chapter 13, Session Laws of 1936, First Special Session.'' It is quite lengthy and we need consider only section 6 thereof, which reads as follows:

''Sec. 6. Sec. 10, subdivision (a), chapter 13, Session Laws of 1936, first special session, is amended to read:

''10. *Unemployment Compensation Commission.* (a) There is hereby created an unemployment compensation commission of Arizona to be composed of three members, to be appointed by the governor for terms of two, four and six years respectively; and thereafter each new member, other than an appointment to fill a vacancy, shall be for a period of six years; vacancies on said commission to be filled for any unexpired term. Each such member shall receive as compensation the sum of one thousand dollars per annum.''

It will be noted, in the first place, that the title of the act in no way mentions section 10 of chapter 13,

*supra,* as one of the sections to be amended, and that in the body of the act only subdivision (a) of section 10, *supra,* is set forth as amended. The sections of the Constitution referred to above read as follows:

"Section 13. Every Act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title; but if any subject shall be embraced in an Act which shall not be expressed in the title, such Act shall be void only as to so much thereof as shall not be embraced in the title."

"Section 14. No Act or section thereof shall be revised or amended by mere reference to the title of such Act, but the Act or section as amended shall be set forth and published at full length."

It is contended by defendant that section 6 of chapter 68, *supra,* is unconstitutional for two reasons: first, that the title of the act contains no reference to any amendment to be made to section 10 of chapter 13; and second, that section 6, which purports to amend a certain portion of section 10, *supra,* does not set forth section 10 in full as amended, as required by section 14, *supra,* of the Constitution, but only a portion of the section.

We have considered the purpose and meaning of these two provisions of the Constitution in a number of cases, the first being *Board of Control of State of Arizona* v. *Buckstegge,* 18 Ariz. 277, 284, 158 Pac. 837, 840. Therein we said:

" . . . This section of our Constitution, or sections of similar import, are common to the Constitutions of the different states of the Union. The purpose of these constitutional provisions, it may be said generally, is to prevent surprises that were frequent in legislation prior to their adoption. There was a time when titles of acts were of little importance, and not infrequently bore no relation to the legislation that followed. *Omnibus,* hodgepodge, and logrolling legislation with all their evils were more or less prevalent. It is said:

" 'These provisions are intended to prevent the evils of *"omnibus* bills"* and surreptitious legislation.' 36 Cyc. 1017.

"By confining the legislation to the subject contained in the title, neither the members of the Legislature nor the people can be misled to vote for something not known to them or intended to be voted for."

There can be no doubt that this is the purpose of constitutional provisions of this kind, but we have held, in common with most other courts which have passed on the subject, that it is not necessary that the title of the act should be a complete index to the legislation contained therein. As was said in *Re Hauck,* 70 Mich. 396, 38 N. W. 269, and quoted approvingly by us in *Board of Control of State of Arizona* v. *Buckstegge, supra:*

" 'In testing acts of the Legislature by this clause of the Constitution, we should not, on the one hand, be so hypercritical as to require every matter of detail to be stated in the title, nor, on the other hand, so liberal as to render the constitutional provision nugatory. But regard should be had to the letter and spirit of the Constitution, the evils it was intended to prevent, the rights it was intended to preserve, and, so regarding it, to test the act which is claimed to be repugnant to this clause candidly and justly, and, if it shall appear that the constitutional provision has been disregarded, to perform the duty enjoined on us by our oath of office, and declare the act unconstitutional and void.' "

The title of the act plays a very important part therein for without some title there can be no valid legislation. The scope of the title is within the discretion of the legislature; it may be made broad and comprehensive, and in this case the legislation under such title may be equally broad; or, the legislature, if it so desires, may make the title narrow and restricted in its nature, and in such case the body of the act must likewise be narrow and restricted. As was said

by Justice COOLEY, in his monumental work on Constitutional Limitations, seventh edition, page 212:

" 'As the legislature may make the title to an act as restrictive as they please, it is obvious that they may sometimes so frame it as to preclude many matters being included in the act which might with entire propriety have been embraced in one enactment with the matters indicated by the title, but which must now be excluded because the title has been made unnecessarily restrictive. The courts cannot enlarge the scope of the title; they are vested with no dispensing power. The Constitution has made the title the conclusive index to the legislative intent as to what shall have operation. It is no answer to say that the title might have been made more comprehensive, if in fact the legislature have not seen fit to make it so.' "

 With these principles for our guidance, let us examine the title of the act. Had the title of the act stopped at the first comma, it would have been broad in its scope, and one who read the title would have been advised thereby that any matter relating to unemployment compensation might be found in the body of the act. But the title further states that it is amendatory of certain named sections of a certain specified act. We think the natural reaction of one who read the title would be that the only portions of chapter 13 which were to be amended were the particular sections set forth in the title of the act, and that he would be led to believe that any amendments to be made to chapter 13 contained nothing which was not germane to the matters dealt with in the sections named. It seems to us that the construction of the section of the Constitution in question which most truly follows its spirit without being so narrowly technical on the one side so as to substitute the letter for the spirit, or so foolishly liberal on the other as to render the constitutional provision nugatory, is that when it appears from the title of the act that certain

specific provisions of another act are to be amended, the body of the amending act may contain only matter which is reasonably germane to the subject matter of the sections which are stated by the title to be the subject of amendment, and may not go to the extent of amending sections not named in the title and which refer to matters not naturally connected with the subject matter of the particular sections which are to be amended. We think this rule is upheld by an overwhelming weight of authority where the facts were similar to those of the present case. A precisely similar question has arisen in a number of other cases, such as *State* v. *Bankers' Assn.*, 23 Kan. 499; *City of St. Louis* v. *Tiefel*, 42 Mo. 578; *Walters* v. *Brown*, 215 Ky. 196, 284 S. W. 1017; *Pottawatomie County* v. *Alexander*, 68 Okl. 126, 172 Pac. 436; *Ex parte Hewlett*, 22 Nev. 333, 40 Pac. 96, and these courts have followed the rule we have just stated.

The subject matter of section 10, *supra*, is in no way related to nor germane to the subject matter of the sections named in the title of chapter 68, *supra*, and the amendatory section 6, therefore, violates section 13, *supra*, of the Constitution.

It is regrettable that this holding is necessary, for it is obvious that the amendment attempted by section 6, *supra*, represents the latest intention of the legislature, is fully within its power, and is plain and unambiguous in its language. We have said frequently that the legislature is the most important of the three great branches of government, and that in construing its acts, we are to use every effort to ascertain its intention and give force and effect to such intention. But there is one power which is superior to all others, and that is the sovereign people, speaking through their Constitution. When their mandate is clear and unambiguous, there is but one thing for the court to do, and that is to follow such mandate, regardless of

the results. We think it unnecessary to consider the second objection.

The petition for a writ of *mandamus* is denied.

McALISTER, C. J., and ROSS, J., concur.