550 P.2d 80

Edgar F. WHITE, Plaintiff, Appellee and Cross-Appellant,

v.

KAIBAB ROAD IMPROVEMENT DIS-TRICT, Robert Stark, B. W. Burns and Henry Haws, constituting the Board of Directors of Kaibab Road Improvement District, Rhea Woodall, Clerk of the Board of Directors of Kaibab Road Improvement District, and Robert Esterbrooks, Superin-tendent of Streets of Kaibab Road Im-provement District, Defendants, Appellants and Cross-Appellees.

No. 12261–PR.

Supreme Court of Arizona, In Banc.

May 26, 1976.

Gust, Rosenfeld, Divelbess & Hender-son by Fred H. Rosenfeld, Jane Rex Greer, Phoenix, for plaintiff, appellee and cross-appellant.

Wilson, Jones, Morton & Lynch by Robert Auwbrey, Ernest A. Wilson, San Mateo, Cal., and Ryley, Carlock & Ralston

by Joseph P. Ralston, and Moise Berger, Maricopa County Atty. by David B. Krom, Phoenix, for appellants and cross-appellees.

STRUCKMEYER, Vice Chief Justice.

This suit was brought by Edgar F. White to test the constitutionality of Article 1.1, Chapter 5, Title 11, Arizona Revised Statutes (Chapter 127, Laws of 1971). The Superior Court entered a judgment holding the Act unconstitutional for the reason the title did not express the subject embraced in the body of the Act, and enjoined any action by the Board of Supervisors of Maricopa County pursuant thereto. The Superior Court also held that Chapter 127 was valid as against other constitutional attacks. The Court of Appeals reversed, holding the title was constitutionally sufficient. We took jurisdiction to examine this question. That part of the opinion of the Court of Appeals reversing the Superior Court is disapproved, and the judgment of the Superior Court is affirmed.

On September 18, 1972, the Board of Directors of the Kaibab Road Improvement District passed and adopted three resolutions for the improvement of Kaibab Road within the district's boundaries. Resolution No. 3 declared the intention of the Board to improve Kaibab Road and it provided for the assessment of the cost of the improvement against certain lots within the district in proportion to the benefits to be derived from the improvement.

Edgar F. White, owner of a lot against which an assessment was to be made, filed suit in the Superior Court seeking an injunction to prevent the expenditure of funds approved by the resolutions. The Superior Court permanently enjoined the Kaibab Road Improvement District Board from taking any further action to implement Resolution No. 3 and from taking any further action pursuant to the provisions of Article 1.1, Ch. 5 of Title 11, Arizona Revised Statutes (Chapter 127, Laws of 1971).

A.R.S. § 11–701, et seq., enacted in 1945, provides that an improvement district may be established in any unincorporated area by the board of supervisors of the county in which the proposed district is located for the purpose of making local improvements through special assessments. The procedure for the formation of county improvement districts is to file a petition addressed to the board of supervisors, signed by a majority of the persons owning real property within the limits of the proposed district. A.R.S. § 11–703. Thereafter, the board of supervisors must set a date for hearing, at which all interested property owners may appear and be heard. A.R.S. § 11–705. If it appears that the petition has the required number of signatures and the public convenience, necessity or welfare will be promoted, the board of supervisors can declare the improvement district organized under a corporate name. A.R.S. § 11–706A. The board of supervisors shall be deemed the district's board of directors and shall govern the district. A.R.S. § 11–708.

Before ordering improvements made, the board is required to pass a resolution of intention, setting out the specific improvements and the property to be assessed for the cost. A.R.S. § 11–711. A contract is then to be let to the lowest responsible bidder. A.R.S. § 11–721B. Upon completion of the work, the superintendent of streets must make an assessment against each lot in proportion to the benefits to be received. The assessment, with warrants attached which authorize the contractor to demand and receive the assessments, shall then be recorded in the office of the superintendent of streets and for two years constitutes a lien upon the lots. A.R.S. § 11–726. After the recording, the assessment and warrants are to be delivered to the contractor, who may bring suit for their collection. A.R.S. §§ 11–727, 11–728.

By A.R.S. § 11–732, the board of directors may determine whether improvement bonds should be issued to represent

the cost of the work. Such bonds shall be issued in the name of the district and are payable from a special fund collected by the district from special assessments, and are issued to the contractor. A.R.S §§ 11–732, 11–734C. Under this procedure, the property owners within the district are not required to pay assessments until after the improvements have been completed. Consequently the contractor is compelled to arrange his own financing. This financing is usually obtained from a prospective purchaser of the bonds after the project is completed, who, because he is unable to judge the market for the bonds at the time the work is started, must take into consideration a safety factor in case the value of the bonds should decrease prior to the time of their issuance. This substantially increases the cost of constructing the improvements.

In an attempt to reduce this cost, the Legislature enacted the questioned statute. It authorizes the assessment of a lot and a demand for payment of construction costs from the landowner prior to the start of the improvement. This is commonly referred to as a "front end assessment." As stated, this method of payment is designed to provide the contractor with funds during construction and thereby reduces the cost to the landowner. It is estimated that this method of payment reduces the cost of improvements by one-third.

The Kaibab Road Improvement District, which was formed pursuant to A.R.S. § 11–701, et seq., undertook to construct the road improvements with a "front end assessment." White initiated this action protesting the front end assessment and arguing, among other things, that the title to Article 1.1, A.R.S., Chapter 127 of Laws of 1971, was insufficient in that it violated Article 4, Part 2, § 13 of the Arizona Constitution.

Article 4, Part 2, § 13, of the Arizona Constitution provides in its relevant part:

"Every Act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title * * *."

The title to Chapter 127, Laws of 1971, reads:

"AN ACT

RELATING TO COUNTIES; PROVIDING AN ALTERNATE PROCEDURE FOR THE FORMATION OF COUNTY IMPROVEMENT DISTRICTS, AND AMENDING TITLE 11, CHAPTER 5, ARIZONA REVISED STATUTES, BY ADDING ARTICLE 1.1." [1]

White argues that although the title refers to the Act as "Providing an Alternate Procedure for the Formation of County Improvement Districts," the Act actually sets up an alternative procedure for financing improvements after the formation of an improvement district. We agree.

The constitutional requirement that every act embrace but one subject and matters properly connected therewith which shall be expressed in the title was designed to enable legislators and the public upon reading the title to know what to expect in the body of the act so that no one would be surprised as to the subjects dealt with by the act. *Industrial Development Authority of Pinal County v. Nelson*, 109 Ariz. 368, 509 P.2d 705 (1973). The title must be worded so that it puts people on notice as to the contents of the act. *Shaw v. State*, 8 Ariz.App. 447, 447 P.2d 262 (1968). This does not mean, however, that the title must be a complete index to the act. Any provision having a natural connection with the title of the act is properly embraced in the act. *Taylor v. Frohmiller*, 52 Ariz. 211, 79 P.2d 961 (1938). The title can be broad or narrow. *Hudson v. Brooks*, 62 Ariz. 505, 158 P.2d 661 (1945).

---

1. Article 1.1 as enacted in Chapter 127, Laws of 1971, was repealed and a new Article 1.1 enacted in Chapter 119, Laws of 1975, with a more specific title.

The title to Chapter 127 specifically recites that it provides for an alternate procedure for the *formation* of county improvement districts. It does not, however, provide an alternate procedure for the formation of a county improvement district. The method of formation of improvement districts is the same—the landowners must file a petition requesting the formation and the board of supervisors must approve the district's formation. An alternative method of doing this is not provided. Rather, there is provided an alternate procedure for payment for the improvement. We do not think the method of financing the improvement is either directly or indirectly related to the formation of improvement districts or that the title serves to alert a reader as to the possible subject of the Act. In this respect, the title is doubly misleading. It not only wrongfully gives notice that it concerns the subject of the formation of improvement districts, but it does not tell a reader that it provides a different method of assessment and payment for the costs of the improvements.

 We will interpret § 13 of Article 4, Part 2, liberally so as to uphold the constitutionality of an act if there is any legal basis for its validity. *Industrial Development Authority of Pinal County v. Nelson,* supra; *In re Lewkowitz,* 69 Ariz. 347, 213 P.2d 690, vacated on other grounds, 70 Ariz. 325, 220 P.2d 229 (1950); *Dennis v. Jordan,* 71 Ariz. 430, 229 P.2d 692 (1951). But, as we said in *Board of Control of State of Arizona v. Buckstegge,* 18 Ariz. 277, 158 P. 837 (1916):

> "By confining the legislation to the subject contained in the title, neither the members of the legislature nor the people can be misled to vote for something not known to them or intended to be voted for." 18 Ariz. at 285.

and in *Taylor v. Frohmiller,* supra, 52 Ariz. at 217, 79 P.2d at 964, in quoting from Cooley on Constitutional Limitations, we said:

" ' " * * * The courts cannot enlarge the scope of the title; they are vested with no dispensing power. The Constitution has made the title the conclusive index to the legislative intent as to what shall have operation. It is no answer to say that the title might have been made more comprehensive, if in fact the legislature have not seen fit to make it so." ' "

For the foregoing reasons, we hold that the title to Chapter 127, Laws of 1971, does not comply with Article 4, Part 2, § 13, of the Arizona Constitution.

White urges on his cross-appeal that Chapter 127 violates the Arizona Constitution in several other respects. We think the conclusions of the Court of Appeals in this regard are correct and properly dispose of the issues presented.

Judgment of the Superior Court affirmed.

CAMERON, C. J., and HAYS, HOLOHAN and GORDON, JJ., concur.