902 P.2d 1347

**HOME BUILDERS ASSOCIATION OF CENTRAL ARIZONA, a non-profit Arizona corporation; for and on behalf of all similarly situated; Grupe Development Co. Inc., an Arizona corporation; Knoell Bros. Construction, Inc., an Arizona corporation; Marlborough Development Corporation, an Arizona corporation, Plaintiffs–Appellees,**

v.

**CITY OF SCOTTSDALE, a municipal corporation, Herbert R. Drinkwater, Rene Wendell, James D. Bruner, Kathryn Campana, Myron R. Deibel, William Soderquist, and Bill Walton, members of the City Council of the City of Scottsdale, Defendants–Appellants.**

No. 1 CA–CV 92–0210.

Court of Appeals of Arizona, Division 1, Department B.

Feb. 16, 1995.

Review Granted Sept. 26, 1995.*

---

* Corcoran, J., of the Supreme Court, did not participate in the determination of this matter.

Carmichael & Powell, P.C. by Ronald W. Carmichael, Sid A. Horwitz, Brian A. Hatch, Claudia J. Resnick, Phoenix, for plaintiffs-appellees.

Richard W. Garnett III, Scottsdale City Atty., Scottsdale, and Johnston, Maynard, Grant & Parker by Charles J. Adornetto, Phoenix, for defendants-appellants.

Shelley & Bethea by J. LaMar Shelley, Mesa, for amicus curiae League of Arizona Cities and Towns.

## SUPPLEMENTAL OPINION

WEISBERG, Presiding Judge.

After we filed our original opinion in this case, 150 Ariz.Adv.Rep. 47, 179 Ariz. 5, 875 P.2d 1310 (App. October 26, 1993), Plaintiffs–Appellees petitioned the Arizona Supreme Court to grant review. The supreme court granted review and remanded the matter to this court with directions to reconsider our opinion in light of the recent United States Supreme Court decision in *Dolan v. City of Tigard*, 512 U.S. ——, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994). *See* Ariz.R.Civ.App.P. 23(i)(2). We now expressly consider whether *Dolan* has any effect on our prior opinion.[1]

## I. *DOLAN V. CITY OF TIGARD*

In *Dolan*, the United States Supreme Court faced the issue of whether a condition placed on the granting of a redevelopment permit was an unconstitutional taking.

As required by the State of Oregon, the City of Tigard adopted a land management program entitled the Community Development Code (the "CDC"). To minimize flood damage, the CDC required the preservation of greenways within the city's floodplain. For property within this area, the CDC required the city to condition development permits upon a dedication of "sufficient open land" to establish these greenways. To minimize traffic congestion, the CDC also required new developers within a delineated area to dedicate land for pedestrian/bicycle pathways.

Florence Dolan owned a store on property partly within the floodplain. She wanted to enlarge her store and parking lot and applied to the city for a redevelopment permit. Pursuant to the CDC, the city granted the permit on the condition that Dolan dedicate to the city for greenway all of that portion of her land within the floodplain, and an additional portion of land for a pedestrian/bicycle path.

After requesting and being denied a variance, Dolan brought suit against the city, arguing that its conditions were an unconstitutional taking under the Fifth and Fourteenth Amendments. The Oregon state courts upheld the city's conditions, finding that they were "reasonably related" to the city's interests in minimizing flooding and traffic congestion. The United States Supreme Court granted certiorari and reversed.

The Court analyzed the conditions under a two-step approach. First, it considered whether an "essential nexus" existed between the legitimate state interest and the conditions exacted by the city. 512 U.S. at ——, 114 S.Ct. at 2317. The Court had previously developed this step of the analysis in *Nollan v. California Coastal Comm'n*, 483 U.S. 825, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987). In *Dolan*, the Court readily found an essential nexus between the city's interests and the conditions. 512 U.S. at ——, 114 S.Ct. at 2318.

Having found an essential nexus, the Court moved beyond *Nollan* to consider "the required degree of the connection between the exactions and the projected impact of the proposed development." *Id.* at ——, 114 S.Ct. at 2317. The Court determined that the required degree of connection was "rough proportionality," which is similar to the "reasonable relationship" standard adopted by the majority of state courts. *Id.* at ——, 114 S.Ct. at 2319. The Court ruled in favor of Dolan because the city had failed to show that its conditions were "roughly proportional" in nature and extent to the burdens imposed by Dolan's proposed development. *Id.* at ——, 114 S.Ct. at 2321.

## II. DEVELOPMENT FEES IMPLICATE THE TAKINGS CLAUSE OF THE U.S. CONSTITUTION

In analyzing the effect of *Dolan* on this court's opinion, we must first consider whether the fees charged by Scottsdale in this case

---

1. Our prior opinion set forth the factual and procedural history of this matter in some detail.

We therefore move directly to a consideration of *Dolan*.

even implicate the power of eminent domain.[2] If the fees constitute a land-use regulation, eminent domain is implicated. If the fees are a tax, however, they are not subject to the Takings Clause.[3]

■ Development fees, according to Arizona's enabling statute, are fees charged by the municipality to the developer of land "to offset costs to the municipality associated with providing necessary public services to [the] development." Ariz.Rev.Stat.Ann. ("A.R.S.") § 9–463.05 (1990). Development fees are generally considered regulatory fees if they are reasonably related to the needs created by the new development and are used to benefit the land on which they are imposed. On the other hand, they are considered taxes if the fees are not related to the new development and are used to benefit other property. See, e.g., Russ Bldg. Partnership v. City & County of San Francisco, 234 Cal.Rptr. 1, 5–6 (Ct.App.1987); Contractors & Builders Ass'n v. City of Dunedin, 329 So.2d 314, 317–20 (Fla.1976); see also Susan M. Denbo, Development Exactions: A New Way to Fund State and Local Government Infrastructure Improvements and Affordable Housing?, 23 Real Est.L.J. 7, 12 (1994); Brian W. Blaesser & Christine M. Kentopp, Impact Fees: "The Second Generation", 38 Wash.U.J.Urb. & Contemp.L. 55, 64 (1990); Gus Bauman & William H. Ethier, Development Exactions & Impact Fees: A Survey of American Practices, 50 Law & Contemp.Probs. 51, 54 (1987).

■ In the instant case, the payment of the fee was a condition to the city's issuance of a building permit. The fee charged by Scottsdale was for the express purpose of providing future water to the subject property. Thus, the fee was to be used to benefit the property on which the fee was imposed, rather than for general revenue. Also, the extent of the property's need for future water was directly related to the new development. We therefore conclude that Scotts-

dale's development fee is a regulatory fee rather than a tax.

■ We also note that development fees are distinguishable from special assessments which are not subject to a takings analysis. See, White v. Kaibab Road Improvement Dist., 24 Ariz.App. 258, 537 P.2d 986 (1975) ("White I"), disapproved on other grounds, 113 Ariz. 209, 550 P.2d 80 (1976) ("White II"); City of Tucson v. Rickles, 15 Ariz.App. 244, 488 P.2d 180 (1971), vacated on other grounds, 109 Ariz. 82, 505 P.2d 253 (1973). Although both are monetary fees to fund public improvements, and are charged to the benefitted landowners, they differ in several significant respects.

Development fees are imposed by the government upon property-owners who wish to develop their land. Special assessments, however, generally are imposed only after the affected property-owners have petitioned for the creation of an improvement district. See White II, 113 Ariz. at 210, 550 P.2d at 81. The creation of the improvement district is for the express purpose of making the desired improvements. White I, 24 Ariz.App. at 261, 537 P.2d at 989. Given this process, there can be little concern that the government is "forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." Dolan, 512 U.S. at ——, 114 S.Ct. at 2316 (quoting Armstrong v. United States, 364 U.S. 40, 49, 80 S.Ct. 1563, 1569, 4 L.Ed.2d 1554 (1960)).

Development fee ordinances are also more akin to land-use regulations than are special assessments because the fees are a condition on the ability to develop one's property. In addition, the fees are directly necessitated by the needs created by the new development. By comparison, special assessments are neither conditions on development, nor are they necessarily caused by new development. Thus, development fees, unlike special as-

2. We note that Scottsdale does not make the argument in its supplemental brief that an eminent domain analysis is inappropriate. Rather, it simply argues that the particular takings analysis applied in Dolan does not apply or, if it does, that it does not change our prior opinion.

3. The Takings Clause provides that "private property [shall not] be taken for public use without just compensation." U.S. Const. amend. V.

sessments, can be considered land-use regulations.

■ Moreover, the fact that the Scottsdale ordinance merely requires the payment of a fee does not preclude the application of a takings analysis. Courts have frequently applied a takings analysis to regulations that exact only money. *See, e.g., Commercial Builders of N. Cal. v. City of Sacramento,* 941 F.2d 872 (9th Cir.1991) (applying a takings analysis to an ordinance conditioning building permits on payment of fee to offset burdens of providing low-income housing for workers at such developments), *cert. denied,* 504 U.S. 931, 112 S.Ct. 1997, 118 L.Ed.2d 593 (1992); *Blue Jeans Equities W. v. City and County of San Francisco,* 3 Cal.App.4th 164, 4 Cal.Rptr.2d 114 (1992) (applying a takings analysis to an ordinance conditioning building permit on payment of fee for traffic control programs). Also, the United States Supreme Court's remand of *Ehrlich v. City of Culver City,* 15 Cal.App.4th 1737, 19 Cal.Rptr.2d 468 (1993), indicates that the Supreme Court would apply a takings analysis to a purely monetary condition. *See Ehrlich v. City of Culver City,* — U.S. —, 114 S.Ct. 2731, 129 L.Ed.2d 854 (1994). In *Ehrlich,* the developer wished to rezone his property. The city conditioned approval on the payment of a $280,000 "mitigation fee" to compensate for the community's loss of recreational facilities. The appellate court applied a takings analysis but determined that the condition was constitutional under the Takings Clause. The United States Supreme Court vacated the judgment and remanded for reconsideration in light of *Dolan.* This remand implies that monetary fees may be subject to a takings analysis.[4]

Because Scottsdale's development fee ordinance is more akin to a land-use regulation than a tax, we conclude that it is subject to the Takings Clause.

4. Scottsdale's development fee ordinance is also distinguishable from the ordinance at issue in *Third & Catalina Assocs. v. City of Phoenix,* 182 Ariz. 203, 895 P.2d 115 (App. 1994). In *Third & Catalina,* this Court held that a fire safety ordinance was not a land-use regulation, and therefore was not a taking. Scottsdale's development

## III. APPLICATION OF *DOLAN*

The Court in *Dolan* stated that a land-use regulation ordinarily would not violate the Takings Clause if it " 'substantially advance[s] legitimate state interests' and does not 'den[y] an owner economically viable use of his land.' " 512 U.S. at —, 114 S.Ct. at 2316 (quoting *Agins v. Tiburon,* 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980)). The Court concluded, however, that this standard did not apply to the case before it for two reasons:

> First, [the cases applying the traditional standard] involved essentially legislative determinations classifying entire areas of the city, whereas here the city made an adjudicative decision to condition petitioner's application for a building permit on an individual parcel. Second, the conditions imposed were not simply a limitation on the use petitioner might make of her own parcel, but a requirement that she deed portions of the property to the city.

*Id.* Scottsdale argues, and we agree, that *Dolan* has no bearing upon its development fee ordinance because the special circumstances of *Dolan* are not present here.

First, the *Dolan* Court recognized the distinction between a legislative decision affecting entire areas of a city and an adjudicative decision affecting only an individual parcel. Clearly, the Scottsdale ordinance involves a legislative, rather than adjudicative, determination. While *Dolan* also involved a city ordinance, the crucial distinction lies in the amount of adjudicative, staff-level discretion permitted by each ordinance.

In *Dolan,* Tigard's ordinance allowed the City Planning Commission to determine the extent of the conditions to be placed upon the grant of a building permit. The Tigard ordinance merely required that "*sufficient* open land for greenway" be dedicated, and allowed the staff to determine what was "sufficient." *Dolan,* 512 U.S. at —, 114 S.Ct. at 2314 (emphasis added).

fee ordinance, however, is distinguishable from *Third & Catalina* because it is not a "safety regulation designed to protect human life," but instead imposes conditions upon the issuance of a building permit. The Scottsdale ordinance simply regulates the use of land by preventing development without the payment of a fee.

Conversely, the Scottsdale ordinance specifies the amount of the fee to be charged for each type of development. Unlike Tigard's ordinance, Scottsdale's allows its staff no discretion in setting the fees which are based upon a standardized schedule. The fees are tailored to the type of development involved and are uniform within each class of development. Because the fees are standardized and uniform, and because the ordinance permits no discretion in its application, a prospective developer may know precisely the fee that will be charged. The Scottsdale ordinance, therefore, does not permit a *Dolan*-like *ad hoc*, adjudicative determination.[5]

The *Dolan* court was concerned with arbitrary, non-legislative conditions being placed upon landowners. *Dolan* is implicated when an administrator or commission exacts conditions from individual property-owners with little or no legislative guidance. This concern, however, is simply not present when the legislature, after undertaking sufficient analysis, has determined a policy and then mandated uniform and specific means of accomplishing that policy, as Scottsdale has done here.

■ Second, the *Dolan* court distinguished between a dedication of land and a mere limitation on the use of property. *See Dolan*, 512 U.S. at ——, 114 S.Ct. at 2316. Scottsdale argues that development fees are more akin to use limitations because they do not pose the danger of "shifting public burdens to fortuitously situated individual property owners." Appellees respond that the United States Supreme Court's remand of *Ehrlich* indicates that development fees are more similar to land dedications. While we agree that the *Ehrlich* remand implies that a mone-

tary fee is subject both to a takings analysis, *see supra*, and, in the appropriate case, to a *Dolan* analysis, this second prong is not determinative here. Because we find that Scottsdale's development fees involve a legislative, rather than adjudicative, determination, we conclude that *Dolan* does not control the outcome of this case.[6]

## CONCLUSION

Because the Scottsdale development fee ordinance is a legislative determination affecting the entire city, we conclude that the ruling in *Dolan* does not affect our prior opinion in this matter.

EHRLICH, J., concur.

GRANT, Presiding Judge, dissenting.

I dissent in this case for the second time. The supreme court granted a petition for review of our previous opinion and then remanded the case to us for reconsideration of our opinion in light of *Dolan v. City of Tigard*, 512 U.S. ——, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994). The majority concludes that because the Scottsdale development fee ordinance is a legislative determination affecting the entire city, the ruling in *Dolan* does not affect the prior majority opinion in this matter.

I have a different view of the application of *Dolan* to the facts of this case. In my previous dissent I agreed with the majority that deference should be afforded a municipality's determination of the reasonable amount of a development fee. I disagreed with the standard of review the majority applied to the trial court's determination of a "beneficial use" to the new subdivisions. I said that the

---

5. In our prior opinion, we remanded for a determination of the reasonable relationship between the amount of the development fee and the burden imposed upon Scottsdale by the new development, pursuant to A.R.S. section 9–463.05(B)(4). Of course, in determining whether such a relationship exists, the trial court must consider the costs of Scottsdale's proposed plan to determine whether the fees bear a reasonable relationship to the burdens imposed.

6. The Dissent's discussion is primarily a restatement of its original position: that the trial court acted within its discretion when it found that the proposed expenditure would not result in a bene-

ficial use to the property. We addressed this issue in our earlier opinion in this case. *See* 150 Ariz.Adv.Rep. 47. Briefly, we believe that the benefit question is an issue of fact involving broad policy or public welfare considerations. The trial court must therefore acquiesce to the legislature's judgment "unless it is clearly erroneous, arbitrary and wholly unwarranted." It may not merely apply a reasonableness test and thereby substitute its judgment for that of the legislature. *Edwards v. State Bd. of Barber Examiners*, 72 Ariz. 108, 113, 231 P.2d 450, 452 (1951).

trial court should (as was done in this case) independently review the proposed expenditure and determine if it will result in a "beneficial use" to the new developments as required by the enabling statute. To facilitate this review, plans must exist in sufficient detail to enable the trial court to reasonably conclude that the expenditure will result in a "beneficial use."

The first requirement of *Dolan* is that an "essential nexus" must exist between a legitimate state interest and the permit condition. *See Nollan v. California Coastal Comm'n*, 483 U.S. 825, 837, 107 S.Ct. 3141, 3148, 97 L.Ed.2d 677 (1987). If the "essential nexus" exists, then it must be decided whether the exactions demanded by the permit conditions bear the required relationship to the projected impact of the proposed development. This is essentially the same requirement as imposed by A.R.S. section 9–463.05(B)(4): "The amount of any development fees assessed pursuant to this section must bear a reasonable relationship to the burden imposed upon the municipality to provide additional necessary public services to the development." This comports with the second part of the *Dolan* test. In deciding this question *Dolan* held that the necessary connection required by the Fifth Amendment is "rough proportionality." *Dolan*, 512 U.S. at ———————, 114 S.Ct. at 2319–20. The *Dolan* Court went on to say that "[n]o precise mathematical calculation is required, but the city must make some sort of individualized determination that the required dedication is related both in nature and extent to the impact of the proposed development." This is essentially the reasonable relationship test adopted by the majority of the state courts.

In its original opinion the majority in this case applied a deferential standard of review to the municipality's determination of the cost of future water supplies. I agreed with that standard of review and stated that this type of factual determination is best resolved through the political process at the legislative level. The majority did not revisit this standard of review in its supplemental opinion but holds that "[b]ecause Scottsdale's development fee ordinance is more akin to a land-

use regulation than a tax, we conclude that it is subject to the Takings Clause." I agree.

The majority in its supplemental opinion, holds that *Dolan* does not apply to this case because the *Dolan* Court said that a land-use regulation ordinarily would not violate the Takings Clause if it " 'substantially advance[s] legitimate state interests' and does not 'den[y] an owner economically viable use of his land.' " 512 U.S. at ——, 114 S.Ct. at 2316 (quoting *Agins v. Tiburon*, 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980)). The majority then distinguishes the fact that in *Dolan* the extent of the conditions to be placed upon the grant of a building permit were not specific, whereas the Scottsdale ordinance specified the amount of the fee to be charged for each type of development. The majority believes that because the Scottsdale ordinance specifies standardized fees, the ordinance does not permit a "*Dolan*-like *ad hoc,* adjudicative determination." The majority has to agree however, that a monetary fee is subject both to a takings analysis, and to a *Dolan* analysis. *See Ehrlich v. City of Culver City*, —— U.S. ——, 114 S.Ct. 2731, 129 L.Ed.2d 854 (1994). The majority then leaps the chasm to its conclusion: "Because we find that Scottsdale's development fees involve a legislative, rather than adjudicative, determination, we conclude that *Dolan* does not control the outcome of this case." The majority decides that because the fee ordinance is a legislative determination affecting the entire city, *Dolan* does not impact the prior majority opinion in this matter. I must dissent from this conclusion.

In our original opinion I dissented because I concluded that the application of the funds created by the development fees to the specific water projects proposed by the city violated a different element, the "beneficial use" requirement imposed by A.R.S. section 9–463.05(B)(1). The *Dolan* court held that the city must quantify its finding beyond a conclusory statement that the dedication could offset some of the traffic demand generated by the development. Likewise Scottsdale has made the conclusory determination that the development fee will be used to increase the city's water supply without specifying

250

how that will be done. Scottsdale offers mere fanciful suggestions such as Planet Ranch, Water Factory 21, and buying water from the San Carlos Apache Tribe.

The *Dolan* court began by saying: "We granted certiorari to resolve a question left open by our decision in *Nollan v. California Coastal Comm'n*, 483 U.S. 825, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987), of what is the required degree of connection between the exactions imposed by the city and the projected impacts of the proposed development." *Dolan*, 512 U.S. at ——, 114 S.Ct. at 2312. The *Dolan* court went on to say that:

> In evaluating petitioner's claim, we must first determine whether the 'essential nexus' exists between the 'legitimate state interest' and the permit condition exacted by the city. *Nollan*, 483 U.S. at 837, 107 S.Ct. at 3148. If we find that a nexus exists, we must then decide the required degree of connection between the exactions and the projected impact of the proposed development.

*Id.* at ——, 114 S.Ct. at 2317. The question is, simply stated, does the fee result in a beneficial use to the development charged or not? The issue presented in this case is narrow: will the city's expenditure of funds in the manner proposed reasonably result in a beneficial use to the new subdivisions? This question does not require determinations of policy or weighing of benefits to the general public as the police power issue does.

At trial in this case, the plaintiff established by a preponderance of the evidence that the proposed expenditure will not reasonably provide a beneficial use. Furthermore, the findings of the trial court below demonstrate that the second prong of the *Dolan* test, "rough proportionality" was not met in this case either because there was no showing that any water would ever be produced as a result of the fee imposed. On appeal, this court is bound by the trial court's finding of this fact unless it is demonstrated to be clearly erroneous.

Scottsdale's plan for development of future water resources is almost nonexistent. The trial court found that the projects conceptual-ly described in the plan are most likely *not* going to produce water. Therefore the trial court concluded that there would be no beneficial use to these developments in the foreseeable future. There is ample evidence in the record to support this finding of the trial court and therefore it should be affirmed. Absent beneficial use to the development, the city's imposition of a development fee to fund the proposed projects cannot be upheld on the basis of A.R.S. section 9–463.05. *Dolan v. City of Tigard* supports this holding. I would therefore affirm the trial court.