221 P.3d 384

**HOME BUILDERS ASSOCIATION
OF CENTRAL ARIZONA,
Plaintiff/Appellant,**

v.

**CITY OF GOODYEAR; and Jim Cavanaugh, Bob Antoniak, Frank Cavalier, Brenda Holland, Georgia Lord, Joanne Osbourne, and Dick Sousa, in their official capacities, Defendants/Appellees.**

**No. 1 CA–CV 08–0842.**

Court of Appeals of Arizona,
Division 1, Department A.

Dec. 8, 2009.

---

* A judge of the Superior Court of Arizona authorized and assigned to sit as a judge on the Court of Appeals, Division Two, pursuant to the Arizona Supreme Court Order filed Sept. 17, 2009.

Clint Bolick, Phoenix, Attorney for Plaintiff–Appellant.

Gust Rosenfeld P.L.C. by Richard A. Segal, David A. Pennartz, Phoenix, Attorneys for Defendants–Appellees.

## OPINION

PORTLEY, Judge.

¶ 1 In this appeal from the denial of special action relief, Home Builders Association of Central Arizona ("HBA") challenges the trial court's determination that the City of Goodyear's 2006 development impact fee ordinances did not violate Arizona Revised Statutes ("A.R.S.") section 9–463.05(B)(4) (2008).[1] For the following reasons, we affirm the judgment.

## BACKGROUND AND PROCEDURAL HISTORY

¶ 2 The City of Goodyear ("the City") adopted sixteen development impact fee ordinances (Ordinance Nos. 2006–1037 to –1052) on December 11, 2006. The ordinances increased the development impact fees to be assessed for: water, waste water, transportation, storm drainage, regional transportation, public works, police, open space and regional parks, library, general government, fire and emergency, community parks, community facilities, arterial streets, reclaimed water, and water resources.

---

1. We cite the 2008 version of § 9–463.05(B)(4) because no revisions material to this decision occurred between 2006 and 2008.

¶ 3 HBA filed its complaint for special action relief on August 3, 2007, and sought "a declaration that the City's impact fee policies are unlawful and an injunction against the continued imposition of unlawful impact fees and the City's failure to offset them with added tax revenues." HBA alleged that the City violated A.R.S. § 9-463.05(B)(4) in setting the impact fee amounts because it failed to "offset the impact fee by anticipated sale, property, or construction privilege taxes that will be generated by the development and used for the same capital purposes funded by the impact fees."

¶ 4 The parties subsequently framed the issue to be decided by the superior court as whether "the City [is] required to offset against development impact fees all contributions made by the developer or property owners towards the same capital costs through present or future taxes, fees, or assessments." In response to the court's order to file a special action brief, HBA filed a motion for partial summary judgment and argued that the City did not properly "consider" relevant future revenues pursuant to § 9-463.05(B)(4). The City responded, labeled its brief a cross-motion for summary judgment, and argued that it had complied with the requirements of § 9-463.05(B)(4).

¶ 5 After oral argument, the trial court rejected HBA's contention that the statute required the City to reduce the impact fees on a dollar-for-dollar basis by the amount of future revenues estimated to be paid by the development toward the cost of improvements. Instead, the court found that "[t]he requirement of the statute that the municipality 'consider' future taxes and fees requires that the city meet a 'rough proportionality' test, which does not require a precise mathematical calculation." In support of that conclusion, the court further noted that, had "the legislature intended a straight across credit, [it] would have mandated a credit or offset in paragraph (B)(4)." Nevertheless, the court held that the statute did "require Goodyear to give a good faith consideration of the future taxes and fees" to be collected from development property owners. The court set an evidentiary hearing to determine whether the City in fact had com-

plied with the "consideration" requirement when it enacted the 2006 ordinances.

¶ 6 At the evidentiary hearing, the court, without objection, advised the parties that the proceeding was being conducted "as an administrative review" and the court was only interested in "find[ing] out if there's evidence to support [the City's] decision." After the hearing, the court found that the City had presented "substantial evidence . . . [which indicated] that Goodyear gave proper consideration to other taxes, fees, etc. that the property owners in the new developments would pay toward capital costs of the public services covered by the development fee, as required by A.R.S. § 9-463.05(B)(4)." The court then denied HBA's motion for partial summary judgment.

¶ 7 Subsequently, the parties submitted a stipulated form of judgment. In addition to including the court's ruling, the proposed form stipulated that HBA "is denied all relief on the Complaint," and that "the City's Cross-Motion for Summary Judgment is granted." The court entered judgment and HBA filed its appeal. We have jurisdiction pursuant to A.R.S. §§ 12-120.21 and 12-2101(B) (2003).

## DISCUSSION

¶ 8 We review a trial court's denial of relief in a special action for abuse of discretion. *Stoudamire v. Simon,* 213 Ariz. 296, 297, ¶ 3, 141 P.3d 776, 777 (App.2006). However, to the extent that the resolution of an issue depends on statutory interpretation, we review the court's ruling de novo. *State ex rel. Brannan v. Williams,* 217 Ariz. 207, 209-10, ¶ 4, 171 P.3d 1248, 1250-51 (App.2007); *Home Builders Ass'n of Cent. Ariz. v. City of Apache Junction (Home Builders IV),* 198 Ariz. 493, 496, ¶ 7, 11 P.3d 1032, 1035 (App. 2000).

¶ 9 Development impact fees are assessed to "offset costs to [a] municipality associated with providing necessary public services to a development." A.R.S. § 9-463.05(A). They are "designed to assist in raising the capital necessary to meet needs that surely will arise in the foreseeable future but whose precise details may not at the outset be quite

clear." *Home Builders Ass'n of Cent. Ariz. v. City of Scottsdale (Home Builders III),* 187 Ariz. 479, 483, 930 P.2d 993, 997 (1997).

■ ¶ 10 Although the adoption of an impact fee "is a legislative act that carries a presumption of validity," *Home Builders IV,* 198 Ariz. at 496, ¶ 7, 11 P.3d at 1035, municipalities must comply with statutory requirements. *See Home Builders Ass'n of Cent. Ariz. v. City of Scottsdale (Home Builders I),* 179 Ariz. 5, 7, 875 P.2d 1310, 1312 (App.1993) (holding that municipalities "may not use fees for any purpose or in any manner that will not meet the statutory requirements"); *Home Builders III,* 187 Ariz. at 482, 930 P.2d at 996 (analyzing an ordinance to determine "whether the fee conferred a benefit as required by the statute"); *City of Casa Grande v. Ariz. Water Co.,* 199 Ariz. 547, 550, ¶¶ 9, 20 P.3d 590, 593 (App.2001) (holding that an ordinance that conflicts with a statute is invalid).

¶ 11 The relevant statutory subsection is A.R.S. § 9–463.05(B)(4), which provides:

> The amount of any development fees assessed pursuant to this section must bear a reasonable relationship to the burden imposed upon the municipality to provide additional necessary public services to the development. The municipality, in determining the extent of the burden imposed by the development, shall consider, among other things, the contribution made or to be made in the future in cash or by taxes, fees or assessments by the property owner towards the capital costs of the necessary public service covered by the development fee.

■ ¶ 12 HBA principally argues that the City failed to comply with the subsection because it did not "offset" relevant future revenues against its development fees. Because of that failure, HBA asserts that the City failed in its duty to ensure that the impact fees "reasonably relate to" the burden

of necessary growth-related improvements. The City, however, contends that the economic model it used to determine the fees was designed to avoid the double-charging about which HBA complains.

¶ 13 Our supreme court has interpreted the "reasonable relationship" requirement of § 9–463.05(B)(4) to require that municipal development fees bear a reasonable relationship to the actual burden imposed on the municipality by development. *See Home Builders III,* 187 Ariz. at 484, 930 P.2d at 998 (emphasizing "the need to ensure that development fees are not used to impose on developers a burden all the taxpayers of a city should bear equally" and stating that § 9–463.05(B)(4) "ensures that [a developer] will pay his fair share of [the capital cost of new public services]"). The court further explained that the "reasonable relationship" requirement is similar to the "rough proportionality" standard articulated in another context in *Dolan v. City of Tigard,* 512 U.S. 374, 391, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994).[2] *Home Builders III,* 187 Ariz. at 486, 930 P.2d at 1000.

■ ¶ 14 A challenge to the "reasonable relationship" requirement could be premised upon a municipality's failure to actually account, in some meaningful way, for future revenues to be paid by a development property owner and applied to the growth-related capital costs on which impact fees were calculated. *See Home Builders I,* 179 Ariz. at 12, 875 P.2d at 1317 ("The enabling statute does not require precision, only a 'reasonable relationship.'"). But as long as an impact fee is "reasonably related" or "roughly proportional" to the actual burden imposed by development, a municipality may be found to comply with § 9–463.05(B)(4). Because we have held that a "less restrictive standards approach" applies to § 9–463.05, and that the statutory requirements must be "construed

---

2. Contrary to HBA's arguments, however, this does not mean that *Dolan* itself is applicable to impact fees enacted pursuant to § 9–463.05(B)(4). In fact, HBA has already litigated this very question on several occasions, including before the Arizona Supreme Court. *See Home Builders III,* 187 Ariz. at 485–86, 930 P.2d at 999–1000; *Home Builders Ass'n of Cent. Ariz. v.*

*City of Scottsdale (Home Builders II),* 183 Ariz. 243, 247–48, 902 P.2d 1347, 1351–52 (App. 1995). The Arizona Supreme Court held that *Dolan* is not applicable to legislative impact fee determinations. *Home Builders III,* 187 Ariz. at 485–86, 930 P.2d at 999–1000; *see also Home Builders II,* 183 Ariz. at 247–48, 902 P.2d at 1351–52.

broadly," *Home Builders I,* 179 Ariz. at 10, 875 P.2d at 1315, a "municipality need only show some rational basis for setting the amount of the fee in order to avoid it being 'clearly erroneous, arbitrary, and wholly unwarranted.'" *Id.*

¶ 15 During the evidentiary hearing, the City offered evidence of how it calculated the costs of growth-related capital improvements and the manner in which it proposed to recoup certain growth-related costs through development impact fees. The City presented evidence that, in creating the capital plan it ultimately adopted, it diligently tried to separate forecasted capital costs strictly related to growth from other projected capital costs. Under the plan adopted by the City, impact fees collected pursuant to the new ordinances will be used to fund capital costs related to growth, but not capital costs related to repair, replacement, or upgrade of existing facilities. Tom Pippen, the consultant who prepared the plan for the City, further testified that other revenues to be paid by property owners were considered in calculating impact fees. Before the new impact fees were calculated, the City "offset" against the costs of growth-related infrastructure the revenues to be collected from development agreements and grants. The consultant, in testifying about other future revenues, stated that if construction sales tax and other sales taxes collected from development property owners were used to fund growth-related improvements, it would be appropriate to offset those revenues against the impact fees. He testified, however, that based on conversations with the City staff, it was his understanding that the City would not use those revenues for growth-related capital costs but "for general fund purposes."[3] The City also offered minutes from the City Council's public hearing on the impact fees as evidence that construction sales taxes would be applied to growth-related costs other than those to be covered by the impact fees. Accordingly, those future tax revenues were not "offset" against the costs to be funded by impact fees.

¶ 16 HBA did not dispute the manner in which the City calculated the costs to be funded by impact fees and did not contest the reasonableness of those calculations. It argued only that the impact fees were not roughly proportionate to and did not reasonably relate to the true "burden imposed upon" the City by development because the City failed to give adequate consideration to taxes to be paid in the future by development property owners and applied toward the capital improvement costs covered by impact fees. On appeal, it contends that the trial court abused its discretion when it found that there was substantial evidence that the City sufficiently "considered" relevant future revenues. Specifically, HBA argues that the City did not "consider" sales and property tax revenues or future grant revenues because it did not offset any such revenues against the impact fees.

¶ 17 At the conclusion of the evidentiary hearing, the court found:

Goodyear's expert ... participated in the research and preparation of the plan adopted by Goodyear for the increase in the development impact fees. Using a line item study of capital improvements, ... Goodyear included only growth related fees in its increased impact fee.

Mr. Pippen designed an impact fee that would pay for only growth related capital improvements and would offset all other funding sources or revenue sources that would pay for the capital improvements including grants and state shared revenues. Although the design of the impact fee did not give offsets for construction sales tax, general sales tax or property tax, such offsets were not required under these facts because the impact fee was designed in a way that these other tax funds would not be utilized to pay for the growth related capital projects.

. . .

Although Home Builders mounted a challenge to [ ] Goodyear's analysis, the Court finds that there is substantial evidence, through the work of Mr. Pippen,

---

3. The trial court permitted the testimony about the conversations with the City staff to be admitted over HBA's objection only to show the factual predicate for the consultant's conclusion and not for the truth of the underlying information.

and his report to Goodyear, that Goodyear gave proper consideration to other taxes, fees, etc. that the property owners in the new developments would pay toward capital costs of the public services covered by the development fee, as required by ARS § 9–463.05(B)(4).[4]

¶ 18 In reviewing the trial court's findings, we are mindful of the burden of proof and standard to be applied. In challenging the City's impact fee ordinances, HBA had the burden to demonstrate that the City violated § 9–463.05(B)(4) by not adequately "considering" relevant future revenues. *See Home Builders III*, 187 Ariz. at 482, 485, 930 P.2d at 996, 999 (stating that "[l]and use regulations of general application will be overturned by the courts only *if a challenger shows* the restrictions to be arbitrary" and that the "factual underpinning" for a municipality's determination "must stand unless shown to be without factual support") (emphasis added). Additionally, "courts [should] acquiesce in the legislative determination of all matters of fact unless it *is clearly erroneous, arbitrary and wholly unwarranted*." *Home Builders I*, 179 Ariz. at 7, 875 P.2d at 1312 (quoting *Edwards v. State Bd. of Barber Examiners*, 72 Ariz. 108, 113, 231 P.2d 450, 452 (1951)). Therefore, "[i]f [a] municipality can show that its plans, calculations and predictions are not 'clearly erroneous, arbitrary, and wholly unwarranted,' [a court should] defer to its judgment and uphold an ordinance as satisfying the broad requirements of section 9–463.05." *Id.* at 10, 875 P.2d at 1315.

¶ 19 We are also mindful of the fact that HBA does not contend that § 9–463.05(B)(4) required the City, in setting its impact fees, to offset against those fees all future revenues of whatever sort that may be collected from development property owners. Instead, HBA argued to the trial court and on appeal that the statute obligated the City to offset against impact fees only the revenues it will collect from development property owners and apply to improvements the impact fees were assessed to cover (i.e., those revenues the City will use to fund growth-related improvements on which the impact fees were calculated).

¶ 20 On the record before us, we cannot conclude the trial court erred in finding the City satisfied its obligation to consider relevant future revenues in establishing impact fees that reasonably relate and are roughly proportionate to the cost of growth-related improvements. As noted above, under the City's plan, impact fees are collected and applied only against the cost of growth-related improvements and did not go to pay for other improvements. Grant monies and shared revenues associated with the improvements were offset against the costs to be funded by impact fees.[5] While HBA argues that the City should have offset various sales and property taxes anticipated to be collected from the improvements because it will use those taxes to pay for growth-related improvements, it presented no evidence that the City actually will use those revenues for those purposes. Although HBA's expert testified that in prior years the City had applied sales tax revenue toward the cost of capital infrastructure, the witness did not and could not testify that, contrary to what the City staff had told the City's consultant, the growth-related infrastructure costs on which the impact fees were calculated would be funded by future tax revenues collected from development property owners. Thus, HBA was unable to meet its burden to prove that, in calculating the impact fees, the City failed

---

4. The trial court previously had characterized the City's position in this manner: "You're saying the city considered the contributions to be made in the future with future taxes, assessments and fees, and the way it considered it is that it created a system where no future taxes, assessment or fees would be used to pay for the capital improvements already paid for by the development fees."

5. HBA also argues that the City did not forecast grant monies and/or shared revenues that it might receive in the future that could be used for growth-related improvements. However, whether a municipality must forecast and take into account future revenues that may be acquired from sources other than development property owners was not raised below. Consequently, we decline to address it on appeal. *See Englert v. Carondelet Health Network*, 199 Ariz. 21, 26, ¶ 13, 13 P.3d 763, 768 (App.2000) (holding that appellate courts "generally do not consider issues ... raised for the first time on appeal").

to account for future tax revenues from the development that would be applied to the costs on which the impact fees were calculated. *See Home Builders III*, 187 Ariz. at 482, 485, 930 P.2d at 996, 999 (challenger to ordinance has burden to prove municipality acted arbitrarily).

■ ¶ 21 HBA contends that the City failed to prove the factual predicate underlying the City's consultant's report and recommendation—that the City would not use tax revenues collected from development for the same growth-related capital costs to be funded by the impact fee revenue. It argues the City could not rely on the consultant's assertion that the City would not use sales and other taxes from the improvements to pay growth-related infrastructure costs because that statement was hearsay. *See* Ariz. R. Evid. 801. But the consultant's account of what he had heard from the City staff on that point was admissible to show the consultant's state of mind as he created the plan that the City adopted on his advice. *See Vaughn v. Ems*, 744 S.W.2d 542, 549 (Mo.Ct. App.1988) (holding that certain reports were admissible "regardless of the truth of the matter asserted" in order to show the facts upon which a city council relied in making a decision); *see also* 1 Joseph M. Livermore et al., *Arizona Practice: Law of Evidence* § 801.2, at 305–07 (4th ed.2000) (discussing the non-hearsay uses of words and writings to prove their effect on state of mind). Based on the consultant's conversations with the City staff, he formed an understanding that the City would not use those revenues to pay for growth-related capital costs, and his testimony of his investigation and consideration of relevant future revenues constitutes evidence of the City's "consideration" of those revenue sources. *See* Restatement (Third) of Agency § 1.01 (2006) (defining "agency" as a relationship in which the "agent shall act on the principal's behalf and subject to the principal's control").

¶ 22 Moreover, HBA failed to carry its burden of demonstrating that the factual basis underlying the impact fee calculations was "clearly erroneous, arbitrary and wholly unwarranted." *Home Builders I*, 179 Ariz. at 7, 875 P.2d at 1312 (quoting *Edwards*, 72

Ariz. at 113, 231 P.2d at 452). Because HBA failed to demonstrate that the City was in fact planning to use relevant future tax revenues from developments to pay for the capital costs for which the impact fees were imposed, we cannot say the trial court erred in ruling in favor of the City.

■ ¶ 23 Finally, and more generally, HBA contends that the trial court did not conclude that the impact fees in fact bore a reasonable relationship or were roughly proportionate to the burden imposed by the new development. We disagree. Although the court did not make that express finding, it was implicit in the court's conclusion that the City used only growth-related costs in calculating its impact fees and "offset all other funding sources or revenue sources that would pay for the capital improvements including grants and state shared revenues."

## CONCLUSION

¶ 24 Based on the foregoing reasons, we affirm the trial court's denial of special action relief.

CONCURRING: DIANE M. JOHNSEN, Presiding Judge and DANIEL A. BARKER, Judge.